UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

UNITED STATES OF AMERICA

vs.                                   CASE NO.: 3:20-cr-94(S1)-J-32JRK

MARK MANUEL ANGELES MARINO
_____/

**AMENDED MOTION TO SUPPRESS PHYSICAL EVIDENCE AND STATEMENTS,
REQUEST FOR EVIDENTIARY HEARING AND MEMORANDUM OF LAW**

The Defendant, Mark Manuel Angeles Marino, by and through the undersigned
attorney, pursuant to Rule 12(b) of the Federal Rules of Criminal Procedure and the
Fourth Amendment to the United States Constitution, hereby moves this Honorable Court
suppress the following evidence:  all physical evidence listed on the inventory receipt for
the search warrant executed at 6936 Longleaf Branch Drive, Jacksonville, Florida, on
June 17, 2020  including: any evidence derived from the forensic examination of any
electronic or digital devices; any images which purportedly constitute child pornography;
any emails, and/or texts of any communication with any Bitcoin related websites; any
communication with any dark websites or any other websites which purport to offer for
sale images of child pornography; any communications with any juveniles related to
sexually explicit matters; any evidence derived from a second search warrant issued to
"Discord" on August 26, 2020.  Defendant further moves to suppress any statements he
made in reference to the above-evidence to Homeland Security Agents on June 17, 2020.
The physical items and statements were obtained after a search warrant was illegally
executed by law enforcement agents on the residence at 6936 Longleaf Branch Drive,

Jacksonville, Florida, on June 17, 2020[1].

The warrant which forms the basis for the search was issued without probable cause. Critical information in the affidavit supporting the issuance of the warrant was stale. The affidavit for the warrant contains materially false or misleading statements made intentionally or with reckless disregard for the truth or deliberately omitted material information necessary for a proper determination of probable cause. Mr. Marino maintains the search warrant would not have been issued, had the judge been apprised of both the truthful and omitted relevant material information.

Mr. Marino has a reasonable expectation of privacy in the residence at 6936 Longleaf Branch Drive, as he resided at and has an ownership interest in the property and has an interest in the personal property which was seized.  As grounds for this motion, Defendant states as follows:

1.      On one occasion, October 29, 2019, Mr. Marino purportedly attempted to execute a Bitcoin transaction for "five pics" with a dark website suspected of offering images of child pornography and other services for sale.  These facts simply do not provide probable cause to issue a search warrant for a person's home.

2.      There is no evidence in the four corners of this warrant that Mr. Marino ever had any direct contact with the specific site under investigation by law enforcement agents. There is no evidence in the affidavit that any purported offer to pay for five pics constitutes an offer to buy images of child pornography, as opposed to child erotica, or

---

1 This motion amends the original motion (doc. 31) as follows: it references the second superseding Indictment filed November 19th (Doc. 39); it changes the date the search warrant was executed to June 17, to conform to the evidence; it adds reference to the Discord search warrant of August 26 as evidence subject to suppression as "fruit of the poisonous tree" as discussed at the evidentiary hearing of December 10; it corrects several typographical errors which do not affect the substance of the motion.

something completely different.  The representations in the affidavit imply the Bitcoin exchange was for images of child pornography. Unstated and unexplained in the affidavit is that the amount of the exchange, approximately $55.00 United States dollars, is substantially less, by a factor of approximately two-thirds, than the minimum price advertised by the site under investigation for any images or services.  The minimum price for images of child pornography or anything else at the target site was €150.00 Euros.  In other words, assuming *arguendo*, Mr. Marino was engaged in a transaction with the same site the agents were investigating, the amount of the transaction does not support the inference he was attempting to access, download or receive images of child pornography. Without some basic nexus between criminal conduct by Mr. Marino and the site, the totality of the circumstances simply does not support a finding of probable cause.

3.      The affidavit asserts Mr. Marino engaged in a single transaction with the suspect site ten months before the warrant is issued. It also includes the boiler-plate language of virtually every warrant for child pornography in this district which amounts to a conclusionary assertion that individuals who collect child pornography tend to hoard it. However, nowhere does the affidavit connect Mr. Marino to that ubiquitous class of individuals who hoard images of child pornography.

4.      First, the allegation itself that people who "collect" child pornography tend to hoard those images is empirically not true.  This claim is a materially false or misleading statement made with a reckless disregard for its truth. Second, the omission of any evidence or allegation that Mr. Marino possessed any of the characteristics of an individual who collects child pornography constitutes a deliberate omission from the warrant's affidavit made with reckless disregard for its truthfulness.  Absent a connection

between Mr. Marino and the class of people who collect and hoard child pornography, any evidence of a one-time contact with an illicit site is stale.   As a result, there was not probable cause to believe contraband would be present at the time the warrant was executed on June 18, 2020, based on one event which occurred almost 10 months earlier.

5.    Mr. Marino now stands charged with five offenses related to online activities by second superseding indictment filed on November 19, 2020. (Doc.39). Count I charges in sum, that he did knowingly attempt to recruit, entice, harbor, provide, obtain, advertise, maintain, patronize, solicit by any means a person, that is a minor female who had not attained the age of 14 years, while knowing and in reckless disregard of the fact that the minor female had not attained the age of 14 years and would be caused to engage in a commercial sex act all in violation of 18 U.S.C. §1591(a)(1) and §1594(a). Counts II, III, and IV charge, in sum, Mr. Marino with production of child pornography, in violation of 18 U.S.C. §2251(a) and (e). Counts V and VI charge, in sum, receipt of child pornography identified by specific file titles in violation of 18 U.S.C. §2252(a)(2) and (b)(1). Count VII charges, in sum, possession of child pornography on an identified laptop computer in violation of 18 U.S.C. §2252 (a)(4)(B) and (b)(2).

6.    The evidence the United States hopes to use to prove the allegations is largely derived from the seizure, extraction, and forensic review of the contents of electronic equipment seized pursuant to the search warrant on June 17, 2020. The United States also likely hopes to use statements Mr. Marino made to agents as the search warrant was being executed in this case in chief. The search warrant is signed by the issuing magistrate judge on June 16, 2020. It is executed at Mr. Marino's residence on June 17, 2020, by a highly orchestrated team of Homeland Security Agents supported by

local law enforcement. A second search warrant is issued on August 26, 2020 to a web based electronic communication service provider known as Discord. The warrant compelled production of information contained in or associated with an account believed to be controlled by Mr. Marino. The probable cause for the second warrant is derived from evidence obtained from the execution from the warrant challenged in this motion.

7.      Benjamin J. Luedke, a Homeland Security Agent, is the affiant for the warrant to search the house and seize the electronic devices. The warrant and affidavit total 52 pages. (Exhibit 1, attached). It more or less consists of the standard template for search warrants used by the U.S. Attorney's Office for the Middle District of Florida for many years.  The initial section of the affidavit provides the special agent's background and experience. (Exh.1, 1- 2). An overview of the law and statutory authority for the warrant follows with a definition section.  It provides a definition of child erotica which is "materials or items that are sexually arousing to persons having an interest in minors, but that are not, in and of themselves, illegal and do not necessarily depict minors in sexually explicit poses or positions." (Exh.1, 6) Relatively new to this section are explanations of terms related to the dark web: TOR network, cryptocurrency, Bitcoin, Blockchain, cryptocurrency exchanges, and Cospend transactions, as well as what is characterized as cluster analysis. (Exh.1, 11-15).

8.      More boiler-plate language describing the relationship between computers, child pornography, and why forensic searches of electronic devices take time follows the definition section. The agent then swears to series of statements in the next boiler-plate section styled "Child Pornographer Collector Characteristics." (Exh.1, 20-24). Common characteristics of child pornographers include: collecting, producing, and trading images

of child pornography; many individuals who collect child pornography have a sexual attraction to children; many who collect child pornography also collect child erotica, which may consist of images or texts which do not meet the definition of child pornography; and, finally, the  false claim that "many individuals who collect child pornography rarely if ever dispose of their sexually explicit materials…they tend to hoard." (Exh.1, 20-25). Included in the section on collector characteristics is the relatively new and, on its face, seemingly inconsistent paragraph on the tendencies of individuals who use "faster internet download speed and the growth of file-sharing programs and other platforms through which individuals may trade child pornography". (Exh.1, 23-24).   In direct contrast to the hoarders, these individuals tend to "download, view, and then delete child pornography on their computers or digital devices on a cyclical and repetitive basis." (Id.)   Notably absent from the affidavit is any evidence that the target of this investigation, Mark Marino, was known or believed to have any of these characteristics either that of a hoarder or of a cyclical and repetitive user.

9.     Richard Connor is a renowned expert in computer and digital forensics. Mr. Connor opines the assertion that individuals tend to collect and or hoard images of child pornography is false. Mr. Connor's review of over 300 child pornography cases reveals that less than 20% of the individuals targeted by those searches could be categorized as collectors. (Exh.2).   A thorough review by law enforcement forensic examiners should reveal that the statement "many individuals who collect child pornography tend to hoard it" is not supported by the empirical data. Moreover, the seemingly inconsistent assertion in the affidavit that while the advent of high-speed internet leads to more child pornographers deleting the images, the idea that artifacts of the crime may remain to be

discovered is also misleading. While it is true in some cases artifacts such as file names indicative of prohibited content may remain on electronic devices, it is not unusual and, is fairly common, for the file names to not accurately represent the content of the file. (Exh.2).

10.     It is not until page 25 of the affidavit that the section captioned "Facts Establishing Probable Cause" begins. Special Agent Luedke describes in great detail how agents in New York initiate an investigation of a dark website which advertises the sale of child sexual activity related material on the internet. (Exh.1, 25-32). Over the course of late 2019 and early 2020, agents in New York contact a site, purportedly out of the Philippines, on multiple occasions soliciting services identified on the site. The services offered by the site are described, among other places, in an email dated December 19, 2019. The price for those prospective services begins at €150 Euros and goes up from there to €800 Euros, €1200 Euros, €1600 Euros, and more. (Exh.1, 28). The medium of exchange for any service is Bitcoin. Over the next several pages, the affidavit describes how the New York investigation contacts the site in the Philippines on several occasions. Eventually, the New York agents manage to download images of child pornography and make arrangements to pay for it by Bitcoin.

11.     The first reference to any local connection with the investigation occurs on page 32 of the affidavit at paragraph 22(i). (Exh.1). Here at last, the magistrate is told that based on block chain analysis, the Bitcoin program used by the agents to pay for the services is contained in a "cluster with a second Bitcoin address." (Exh.1, 32). The transaction hash ID number is associated with a payment to the suspected site that converts to approximately $55.00 United States dollars. This transaction allegedly

occurred on October 29, 2019. (Exh.1, 31-32). Next, the magistrate learns that the transaction ID number is linked to an account at Coinbase, a popular crypto currency exchange. (Exh.1, 32). Because it appears that Coinbase complies with US Money Laundering regulations, Coinbase keeps a record of transactions associated with the site. Further investigation reveals that Mark Marino is the source of the Bitcoin transaction. The transaction was for $56.38 and originates from an IP address connected to Mr. Marino. By March 11, 2020, the IP address is confirmed to be associated with Mr. Marino's residence. Yet, it takes another three months before an affidavit for the warrant is complete and the affidavit and warrant are submitted to the court for approval.

12.     To restate the probable cause as to Mark Marino as it is alleged in the affidavit, he sends $56.38 to a legitimate Bitcoin exchange site with a notation of "5 pics." This transaction is revealed to be in a cluster of Bitcoin funds associated with undercover funds directed to a suspected illicit site believed to be in the Philippines for images of child pornography. However, left unstated in the affidavit is any explanation for the disconnect between the fee paid by Mr. Marino and the price for services listed in the advertisement. Again, the minimum fee for any services listed in the advertised site which is the target of the New York investigation is €150 Euros. At the prevailing rate of exchange on October 29, 2019, one dollar was the equivalent of .8997 euros. Stated another way, €150 euros at the time was the equivalent of $166 US dollars.

13.     Nowhere in the affidavit is there any discussion of, assuming *arguendo*, the Bitcoin transaction was intended to go the same site in the Philippines that the agents are investigating: what exactly it is the agents suspected Mr. Marino hoped to purchase for the equivalent of €50 euros or $56.00.   Was it child pornography, or child erotica, or

something else altogether? Nowhere in the affidavit is there any explanation or evidence as to why Mark Marino's one-time transaction almost 10 months earlier with this suspect site somehow made him a collector of child pornography who fell within the class of individuals who tended to hoard that collection and therefore making it reasonable to believe the seizure of all his electronic equipment would reveal evidence of a crime.

14.     Inserting the standard boiler-plate language in this affidavit that many people who collect child pornography tend to hoard it is not only empirically not true, it constitutes a deliberate misstatement made with reckless disregard for its truthfulness. Moreover, even if it is true that some or many people who collect images of child pornography tend to hoard it, including it in the template affidavit when there is no evidence this defendant meets any of these characteristics of a collector constitutes a material omission made with reckless disregard for its tendency to mislead the magistrate. It is material to the determination of probable cause. Mr. Marino moves for an evidentiary hearing on the *Franks* issues.

15.     Special Agent Luedke of Homeland Security is the affiant for the warrant and a lead agent for the search conducted on June 17, 2020. He is responsible for assuring probable cause for the warrant and the truthfulness of its contents. He cannot in good faith rely on a warrant devoid of probable cause or one obtained based on material misrepresentations or omissions. Special Agent Luedke's puffing as to any connection between the collectors of child pornography and Mr. Marino constitutes an intent to mislead the magistrate as to the probable cause for the warrant. No reasonable magistrate would have issued this warrant. The good faith exception under *Leon* does not apply to this case.

16.     Mr. Marino submits any physical evidence as well as any statements he made to the agents as a result of the execution of the illegally issued warrant and the second search warrant to Discord constitutes fruit of the poisonous tree and should be excluded from the trial of this matter.

## MEMORANDUM OF LAW

The Fourth Amendment to the United States Constitution, in relevant part states, "no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." United States Constitution, Amendment IV.  Mr. Marino contends this warrant fails to satisfy the standard for probable cause. Alternatively, if there were probable cause, it was stale by the time this warrant was issued and executed. Mr. Marino also contends an evidentiary hearing should be conducted for the Court to assess whether deliberate misrepresentations or falsehoods or omissions materially affected the issuance of the warrant pursuant to the Supreme Court holding in *Franks v. Delaware*, 438 U.S. 154, 98 S. Ct. 2674, 57 L. Ed. 2d 667 (1978) and its progeny. Finally, the Court should reject the application of the good faith exception to the execution of the warrant. *United States v. Leon*, 468 U.S. 897, 104 S. Ct. 3405, 82 L. Ed. 2d 677 (1984).

Mr. Marino discusses four cases which consider the validity of search warrants in factually analogous child pornography cases, the application of *Franks v. Delaware* standard and the *Leon* good faith exception. These cases are: *US v. Perkins*, 850 F.3d 1109 (9th Cir. 2017); *US v. Edwards*, 813 F.3d 953 (10th Cir. 2015); *US v. Bosyk*, 933 F.3d 319 (4th Cir. 2019); and *US v. Falso*, 544 F.3d 110 (2d Cir. 2008). Three of the

appellate panels, *Perkins, Edwards,* and *Falso* conclude the warrants lack probable cause. One Court, *Perkins,* concludes the good faith exception does not save the agents, in part, because of misrepresentations or omissions under the *Franks* standard. The 10th Circuit in *Edwards* and the 2nd Circuit in *Falso* conclude the warrants lack probable cause, but the good faith exception saves the day for the government. In the 4th Circuit, *Bosyk*, in a split decision, finds there is probable cause for the warrant. Mr. Marino maintains the dissent not only persuasively shows there was not probable cause in *Bosyk*, but any probable cause that did exist was stale. The dissent further makes a compelling claim the material omissions in the affidavit should negate relief for the government under the good faith exception of *Leon.*

Mr. Perkins is initially stopped in Toronto as he is travelling internationally to his home in Washington State. (*Perkins*, 1112). Canadian authorities search his electronic devices, in part, because he has two prior convictions for sex offenses and is a registered sex offender. (*Id.*). Suspected images of child pornography are discovered. Ultimately, however, the Canadian authorities conclude the images do not constitute child pornography under Canadian law. (*Id.,* 1113). The Canadian authorities, however, do forward the description of the images and the images to Homeland Security agents in Washington State. The U.S. Homeland Security agents conclude the images are child pornography under United States law and apply for a search warrant. (*Id.,* 1114). The agent in Washington, similar to the local practice of the Middle District of Florida, provides a description of the images in the affidavit but does not display the actual images to the issuing magistrate. Perhaps more significantly, the agent fails to tell the magistrate that the Canadian authorities concluded those same images were not considered child

pornography under Canadian law. (*Id.*).   The Ninth Circuit concludes the agent omitted relevant information from the affidavit that resulted in the misleading impression that the image 989.jpg was unequivocally child pornography. (*Id.*, 1117). The Court stated:

> Agent Ensley omitted from the search warrant application: (1) the fact that Canadian authorities dropped the child pornography possession charge against Perkins because the images were not pornographic; (2) important portions of Constable Ullock's description of the 989.jpg image; and (3) copies of the images.

The Ninth Circuit panel further concludes the omission was deliberate: "Agent Ensley presented a skewed version of events and overstated the incriminating nature of the images." (Id., 1118). "By providing an incomplete and misleading recitation…effectively usurped the magistrate's duty to conduct an independent evaluation of probable cause." Citing *United States v. Lull*, 824 F.3d 109, 116-17 (4th Cir. 2016) (*Id.*, 1118).

The Court then assesses whether the deliberate omissions were material to the issuance of the warrant.  After finding Perkin's two 20-year-old convictions for sex related offenses were only marginally relevant, the panel concluded "the corrected warrant would not support probable cause," (*Id.*, 1119). It is significant to the Court that the affidavit offered no explanation of how the 20-year-old offenses made it more "likely he possessed child pornography" (*Id.*, 1112).  The Ninth Circuit ultimately reverses the District Court's denial of the motion to suppress and vacates the convictions over a dissent. (*Id.*, 1113).

The Tenth Circuit finds the warrant affidavit lacks probable cause in *United States v. Edwards*, 813 F.3d 953 (10th Cir. 2015). The *Edwards* panel includes now Supreme Court Justice Neil Gorsuch. (*Id.*, 956). The court outlines the general standard for probable cause as "a fluid concept — turning on the assessment of probabilities in particular factual contexts — not readily, or even usefully, reduced to a neat set of legal

rules." Quoting *Florida v. Harris*, ___ U.S. ___, 133 S.Ct. 1050, 1056, 185 L.Ed.2d 61 (2013). (*Id.,* 960). The Court notes the magistrate must make a ""practical, common-sense decision" that, "given all the circumstances set forth in the affidavit ... there is a fair probability that contraband or evidence of a crime will be found in a particular place." Quoting *Illinois v. Gates*, 462 U.S. 213, 238, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). (*Id.,* 960).

The factual basis for the warrant in Mr. Edwards' case was largely based on the claim he possessed and shared child erotica (not child pornography) and made sexually suggestive comments online about the child in the erotic photographs. (*Id.*, 960). After considering "the impact of each of these allegations on the totality of the circumstances, we hold the affidavit failed to provide sufficient probable cause to establish "a nexus between suspected criminal activity and the place to be searched. *Id."* (Id., 960).

There are two findings by the 10th Circuit in *Edwards* that are directly applicable to the facts in this case. Like this case, the "warrant affidavit does not allege that Mr. Edwards was in fact in possession of child pornography." (*Id.* 965). Moreover, the Court considers and rejects the notion "generic statement collectors of child pornography are highly likely to possess child erotica absent evidence that Mr. Edwards is a member of the group provided a substantial basis for concluding probable cause existed." (Id). In this case, the government very much depends on the inference that because Mr. Marino sent money to a site that offers images of child pornography (albeit for significantly more than Mr. Marino paid), he must also have and collect images of child pornography. After concluding probable cause did not exist in *Edwards*, the court addresses the good faith exception initially articulated in United *States v. Leon*. The test for the *Leon* exception in

the 10th Circuit for determining whether an officer's reliance on a warrant is reasonable, is:

> (1) when the issuing magistrate was misled by an affidavit containing false information or information that the affiant would have known was false if not for his reckless disregard of the truth; (2) when the issuing magistrate wholly abandon[s her] judicial role; (3) when the affidavit in support of the warrant is so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; and (4) when a warrant is so facially deficient that the executing officer could not reasonably believe it was valid. (*Edwards,* 969).

Exceptions one, two and four are rejected rather summarily by the Court. As for exception three, the court ultimately finds "[a]lthough the link between Mr. Edwards's postings and the possession of pornography was logically fallacious, it is not so obviously unsound that it rendered reliance on the warrant objectively unreasonable." (*Id.*, 972).

Next is the case of *United States v. Bosyk,* 933 F.3d 319 (4th Cir. 2019). As described by the majority of the panel:

> The basic facts are these. One day, a link appeared on a secretive online message board. Accompanying the link was a message describing its contents unmistakably as child pornography, as well as numerous thumbnail images depicting sexual molestation of a female toddler. And if you clicked the link, it took you, as promised, to multiple videos of child pornography.
>
> On that same day, an IP address associated with Nikolai Bosyk's house accessed the link. Based on these facts, the government obtained a warrant to search Bosyk's home for evidence of child pornography. The primary question before us is whether that warrant was supported by probable cause. Concluding that it was, we affirm. (*Bosyk,* 222).

A lengthy dissent by Judge Wynn helps frame the critical issues for this court in Mr. Marino's case. He criticized the majority's analysis of the evidence in the affidavit as it described the link to illicit images. Borrowing from the Supreme Court case in *Kyllo v. United States*, 533 U.S. 27, 35, 121 S.Ct. 2038, 150 L.Ed.2d 94 (2001), Judge Wynn reminds the reader of the underlying principles of the 4th Amendment which include "to

place obstacles in the way of a too permeating police surveillance." (quoting *Kyllo* at 34). (*Bosyk,* 339). While criticizing the reasoning and conclusion of the majority of the panel Judge Wynn observes: "The majority opinion concludes—and I agree—that even a "single click" of an internet link to download child pornography can provide probable cause to support a search warrant if the facts set forth in the warrant application establish that 'the person behind that click plausibly knew about and sought out that content.'" (*Id.*, 340). Mr. Marino contends there is not even a single click in this case, much less evidence of intent.

After spending considerable energy chronicling the many ways an individual can accidentally, or unintentionally, access a prohibited site or a website, legitimate or not, Judge Wynn discusses the relationship, or lack of relationship, between the boilerplate claim in the affidavit that people who access child pornography tend to collect it as evidence the target of the affidavit intentionally accessed the prohibited site. He writes:

> Ultimately, the majority's reasoning is circular: the IP address must have accessed the URL through Bulletin Board A because the IP address was associated with a collector of child pornography, and in turn, the IP address must be associated with a collector of child pornography because the IP address accessed the URL through Bulletin Board A. But without any affidavit evidence suggesting that the IP address in fact accessed the URL through Bulletin Board A or any evidence demonstrating that the IP address belonged to a collector of child pornography, the majority opinion cannot permissibly rely on the generalized habits of those who view and possess child pornography. *(Id.*, 349).

He notes the government opted to omit some of the usual collection language from the affidavit:

> Indeed, the fact that the government elected not to include such language is telling. The template for search warrants in child pornography cases used by law enforcement officers in the Bulletin Board A investigation directs affiants that they should include boilerplate "collector" information in an affidavit "ONLY if" the affiant can "tie [collector] characteristics to the

specific offender." *United States v. Reece*, No. 2:16cr104, 2017 U.S. Dist. LEXIS 220176, at 22 (E.D.Va. Mar. 1, 2017). Accordingly, the government's decision not to include boilerplate language related to the "complex" sharing habits of child pornography collectors indicates that even it did not believe the evidence supported inclusion of those boilerplate facts and therefore the inferences drawn by the majority opinion. *(Id.*, 350).

Of significance, Judge Wynn distinguishes the case from the case of *United States v. McGarity*, 669 F.3d 1218, 1230-31 (11th Cir. 2012). Judge Wynn challenges the majority's reliance on *McGarity* for the general proposition that all "consumers of child pornography frequently employ complex means to hide their online activity". (*Id.*,) *McGarity*, he writes, dealt with a complex online ring of child pornography users. (*Id.*) In contrast, like this case *Bosyk*, "documents a single click by an unspecified user." (Id.)

Judge Wynn contends the 2nd Circuit case of *United States v. Falso* also supports his reasoning that probable cause does not exist in this case. He concludes as to the facial probable cause question "[a] single click of a URL, absent any further factual evidence circumscribing the universe of paths…is insufficient to establish probable cause." (*Id.*, 364).

Judge Wynn also maintains the even if there was probable cause in *Bosyk*, it was stale. He notes "child pornography cases present unique staleness questions." Id. In child pornography cases, "Courts have largely concluded that a delay, even a substantial delay between distribution and issuance of a search warrant does not render the underlying information stale." *Id.* The justification for the delay is premised again on the commonly held, but empirically unproven and likely false, assertion the users and or collectors of child pornography tend to hoard it. However, he notes "put simply, the alleged proclivities of collectors of child pornography are only relevant if there is probable cause to believe [a given defendant] is such a collector." Suffice it to say, Mr. Marino maintains both the

underlying premise is false and, even if it is true, there is no nexus between the general class of collectors and him in this affidavit.

Finally, Judge Wynn addresses the good faith exception under Leon. (*Id.,* 366). In the 4th Circuit there is precedent to conclude that the exception does not apply where "an affidavit is officially misleading to establish the evidence of good faith when the affidavit includes puffing – i.e., irrelevant or inapplicable information in an apparent attempt to endue the affidavit with the appearance of genuine substance." (*Id*. Internal quotations omitted). Judge Wynn notes the affidavit in *Bosyk*, contains two paragraphs addressing the target's unlawful conduct. (*Id.*) Indeed in Mr. Marino's affidavit, there is only one paragraph alleging unlawful conduct.

Judge Wynn elaborates:

By devoting the vast majority of the affidavit to information untethered from Defendant—or even Defendant's IP address —the government made the affidavit appear as if it had "genuine substance," *Wilhelm*, 80 F.3d at 123, when in fact the information in the affidavit pertaining to Defendant established only that someone using Defendant's IP address clicked on a link to a widely used File Sharing Site around the same time, but not necessarily after, a post regarding the content of the link appeared on a wholly unrelated website devoted to child pornography. (*Id.,*367).

In Mr. Marino's case several paragraphs are devoted to trying to connect him and his IP address to a single transaction with a cryptocurrency site, not the target site of the investigation. Judge Wynn argues the good faith exception could not save the warrant where the agent misleads the magistrate by making material omissions which rendered it affidavit stale and the deficiency in the evidence itself as to the (URL) "rendered it objectively unreasonable." (*Id.*, 369).  The overriding principle is "an unlawful search reveals evidence of criminality we must not apply inappropriate inferences to bend the law to ensure that a guilty person does not go free." (*Id.*, 369)

Circuit Court Judge, now Supreme Court Justice, Sotomayor, writes the majority opinion in *US v. Falso*, 544 F.3d 110 (2d Cir. 2008).  A majority of the panel holds that probable cause was lacking. A differently aligned majority of the panel, however, finds the good faith exception to the exclusionary rule applies. (*Id*.,114). The search warrant affidavit contains the usual generic allegations that child pornographers are bad and as to *Falso*, alleged "it appeared that Falso specifically 'either gained access or attempted to gain access to the [non-members] website.'" (*Id*., 114). The affidavit also alleged Falso had a prior conviction for a sex offense with a child 18 years or younger.

One critical factor in Judge Sotomayor's analysis, finding no probable cause, was "Even if one assumes (or infers) that Falso accessed the cpfreedom.com site, there is no specific allegation that Falso accessed, viewed or downloaded child pornography." (*Id*., 121). Moreover "the affidavit lacks any information about whether the images were prominently displayed or required an additional click of the mouse; whether the images were downloadable; or what other types of services and images were available on the site." (*Id*., 121).

Judge Sotomayor rejects the district court's reasoning that Falso's criminal history was highly relevant to the probable cause finding, writing "this reasoning falls victim to logic." (*Id*., 122). As for his affidavit's general statements that computers are utilized by individuals who exploit children – she writes there is simply nothing in this statement indicating it is more (or less) likely that Falso's computer might contain images of child pornography. (*Id*., 124). To the general language about child pornographers being hoarders, she notes: "Although Falso might hoard images of child pornography if he viewed and downloaded them, there is no allegation in the affidavit that he was in a

position, or was otherwise inclined, to do so." (*Id.*, 124).

Before concluding that there was no probable cause for the warrant she writes:

> We are not insensitive to "the need for law enforcement to have a certain amount of latitude in conducting criminal investigations." *Martin*, 426 F.3d at 76. But, as we explained in *Coreas*, requiring the government to gather "evidence particularized to the target of the search" before the warrant application is made "will simply focus law enforcement efforts on those who can reasonably be suspected of possessing child pornography." (Id. at 158). (emphasis added). If this proves to be a hindrance, it is one the Fourth Amendment demands. (*Id.*, 124).

Next, after considering the four factors to the *Leon* good faith exception, the court concludes no bad faith was established and thus the exception applies and the evidence was not subject to the exclusionary rule. (*Id.,* 128, 129). However, in dissent, as to the *Leon* ruling, Chief Judge Jacob argues that an officer cannot rely on a warrant tainted by his own misleading affidavit. (Id., 132, 133). He identifies the misleading portions of the affidavit including the generalized statements not directly applicable to the defendant. (*Id.,*). He notes in *Franks'* claims "recklessness may be inferred where the omitted information was clearly critical to the probable cause determination." (*Id.,* 134). (internal quotation omitted).

After noting special agent Lyons was both the affiant and the executing officer, Judge Jacobs quotes another case, which crystalizes the *Leon* issue in both *Falso* and, Mr. Marino maintains, his case:

> Agent Lyons was both the affiant and the executing officer. Accordingly, it is perhaps "somewhat disingenuous, after having gone to the [district judge] with the paltry showing seen here, to suggest, as the government suggests, that at bottom it was the [judge] who made the error and the search and seizure are insulated because the officer's reliance on that error was objectively reasonable." *United States v. Zimmerman*, 277 F.3d 426, 438 (3d Cir.2002).

As the Supreme Court instructs, "suppression is appropriate ... if the officers

were dishonest or reckless in preparing their affidavit." United States v. Leon, 468 U.S. 897, 926, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). *(Id.,*136).

Mr. Marino contends the magistrate judge should not have issued a warrant so devoid of probable cause. Moreover, the affidavit contained deliberate misrepresentations or omissions which were material to this warrant. For both reasons the Leon exception should not apply.

Collectively, the cases discussed support the propositions raised by Mr. Marino: 1) there was not probable cause to issue this warrant; 2) any arguable probable cause that did exist was stale; 3) a *Franks v. Delaware* hearing is warranted; 4) the *Leon* good faith exception does not apply; 5) the physical evidence should be suppressed pursuant to the exclusionary rule; and 6) any statements made by Mr. Marino to agents during the execution of the warrant should also be suppressed as fruit of the poisonous tree.

## CONCLUSION

**WHEREFORE**, the Defendant, Mark Marino, for the above-mentioned reasons, respectfully requests this Court grant this motion and suppress all evidence seized and all statements made by him as a result of the unlawful search and the consequent violation of his Fourth Amendment rights.  In addition, Mr. Marino would request an evidentiary hearing on this *Franks* issue.

Respectfully submitted,

*S:// Thomas M. Bell*
THOMAS M. BELL, #0615692
301 West Bay Street, Suite 1460
Jacksonville, Florida 32202
Telephone (904) 354-0062

Telecopier (904) 353-1315
tbellesq@bellsouth.net
Attorney for Defendant


## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on December 16, 2020, I electronically filed the foregoing with the clerk of the Court by using CM/ECF system which will send a notice of electronic filing to Kelly Karase A.U.S.A.

*S:// Thomas M. Bell*
Thomas M. Bell