UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

UNITED STATES OF AMERICA

vs.                                                                                      CASE NO.: 3:20-cr-94(S2)-J-TJC-JRK

MARK MANUEL ANGELES MARINO
_____/

## OBJECTIONS TO THE REPORT AND RECOMMENDATION

The Defendant, Mark Marino, by and through the undersigned attorney, pursuant to 28 U.S.C. §636, Rule 59, Federal Rules of Criminal Procedure, and Local Rule 6.02 (Middle District of Florida) hereby files these objections to the Magistrate's Report and Recommendation(s), (hereinafter R&R), of May 24, 2021. (Doc. 64).

## INTRODUCTION

For organizational purposes, Mr. Marino will identify only the passages, factual and legal, in the R&R which he disputes. The basis of the objection is then provided.

The R&R thoroughly summarizes the evidentiary record, both in support of and in opposition to, the Amended Motion to Suppress. (Doc. 47). It provides an explanation of its reasoning. Other than the noted exceptions to several of the factual inferences the Court makes in the R&R, Mr. Marino's focus is on the Court's conclusions concerning probable cause, the *Franks* issues, staleness, and the *Leon* Good Faith Exception. Mr. Marino incorporates by reference the arguments made in the Amended Motion to Suppress and Memorandum, the Reply, and the evidentiary record of December 9, 2020. (Docs. 47, 49).

## THE RECOMMENDATION

The Court finds "that the information set out in the affidavit supplied probable cause in the search warrant: that the probable cause was not stale; and that any misrepresentations or omissions do not defeat probable cause. Alternatively, suppression is not warranted because Agent Leudke reasonably and in good faith relied on a facially valid search warrant." (Doc 64-6). Mr. Marino, for the reasons described in the Amended Motion to Suppress, the Reply, and for the reasons set forth below, objects to each of these findings.

## INITIAL ADVERTISEMENT IN AFFIDAVIT

The R&R notes that the affidavit references that the initial advertisement to the agents in New York "listed other 'offers' including a '[c]am-show', '[v]ideo of the girl,' and 'proof of the girl.'" (Doc, 64-10). This portion of the affidavit is directly linked to the quoted section of the affidavit, which, in sum, suggests 4- to 12-year-old girls in the Philippines are available for normal sex for €8,000 a week. There is, however, nothing about this passage which states or implies a "[c]am-show," "[v]ideo of the girl," and "proof of the girl" containing child sexual abuse material was available for $56.00 U.S.D. for five pics or any amount remotely close to that price.

## INDIVIDUALS DO NOT PAY FOR CHILD EROTICA

Agent Leudke testified at the hearing that he did not believe that this offer for a "cam-show," "video of the girl," and "proof of the girl" described on page 26 of the affidavit constituted "an offer for child erotica because in his 'training and experience,' individuals do not pay for child erotica." (Doc. 64-10, 11). The search warrant affidavit only contains two

explicit references to child erotica. Those are in subparagraphs b and c of paragraph 15 of the search warrant affidavit. (Doc. 46-2-32, 33). Nowhere in either of these sub-paragraphs or anywhere else in the affidavit is there an assertion that individuals do not pay for child erotica. Indeed, the affidavit provides "many individuals…share information and trade depictions of child pornography and child erotica as a means of gaining status, trust, acceptance, and support." Id. This assertion, if true, certainly implies images of child erotica have value.

### AGENT'S TESTIMONY OF DISCOVERY OF CHILD SEXUAL ABUSE MATERIAL ON A TELEPHONE MORE THAN A YEAR EARLIER

The R&R notes Agent Luedke's testimony on the subject of the factual underpinnings for the customary language concerning "collectors" in the affidavit.  The agent said, "that on one occasion the subject of a search warrant distributed child abuse material on a social media application in April 2019 and, when the search warrant was executed almost a year later in March of 2020, the image that had been distributed in April 2019 was still on the subject's devices." (Doc. 64-25).

While Mr. Marino does not challenge the factual accuracy of the personal experience of the agent, he does contend that this court should give this testimony little to no weight, in deciding the accuracy of the "collector/hoarder" paragraph.  Absent more information about whether the target of the warrant in the case he described meets the circular definition of collector in the standard warrant template, this testimony is simply antidotal evidence that one person had child sexual abuse material on his device one year after the warrant was issued. In this case, the affidavit only informs the magistrate that on one occasion Mr. Marino may have had contact with an entity that controls the target wallet which communicated with the agents.

This evidence alone does not provide probable cause to believe Mr. Marino was a collector or hoarder of child sexual abuse material who would have of an evidence of a crime on his electronic devices seven to eight months after the event.

### THERE IS NO EVIDENCE MARK MARINO HAD ANY OF THE CHARACTERISTICS OF A "COLLECTOR"

Agent Leudke did testify that when he applied for the search warrant in this case that "there was not specific evidence that Mark Marino had any of the characteristics of a "collector" or "hoarder" of child sexual abuse material. (Doc. 64-25, 26). There was also no evidence that Mr. Marino was a convicted sex offender, had any specific sexual history, or had any history of domestic abuse or child abuse complaints." Id. The court should give this testimony great weight as a material omission. Absent some evidence Mark Marino was a collector or hoarder, other than this is a child sexual abuse material investigation, any probable cause which did exist for this warrant was stale.

### THE AFFIDAVIT FAILS TO ESTABLISH PROBABLE CAUSE

"[T]he Affidavit contains sufficient evidence to conclude that it was fairly probable that the Bitcoin Defendant transferred on October 29, 2019 was sent in exchange for child sexual abuse material…the Affidavit establishe[d] the user of the Email Account sold child sexual abuse material, not child erotica." (Doc. 64-40).

Mr. Marino respectfully objects. This conclusion is based on three assumptions not supported by the facts contained in the four corners of the affidavit. First, that the entity the agents were communicating with was the same on that Mr. Marino communicated with.  There is no evidence at all concerning how many people or entities can control a target wallet.

Without more information in the affidavit about the structure of the target wallet, Mr. Marino contends the Court cannot find it is fairly probable it is the same entity. Second, assuming the same entity did control the target wallet, is it fairly probable, more than by chance, that Mr. Marino was communicating with a different dark website than the agents. The people sending child sexual abuse materials to the agents for free to induce them to pay €8,000.00 for sex with a 4- to 12-year-old girl for a week, could very well have had other websites which offered a variety of other services, both licit and illicit, for less. There is simply no evidence in this affidavit that makes it fairly probable that Mark Marino sent money to the same service. Third, and most significant, Mr. Marino contends that the information in the affidavit of the one-time transfer of $56.00 U.S.D. is inconsistent with the information in the affidavit about the price structure for child sexual abuse material. That is, assuming it was the same entity and same site, it is possible there were other services available. Mr. Marino references child erotica as a reasonably likely alternative example simply because, according to the representations made in the affidavit, people who tend to have an interest in the same type of material also have an interest in child erotica. Child erotica does not meet the definition of child sexual abuse material and probably is less expensive. This makes the omissions from the warrant about the images which were not child sexual abuse material all the more significant. The same site did have and did provide images which were not illegal.

      The R&R ultimately concludes that Agent Luedke's failure to inform the issuing Magistrate that some portions of the free sample of images sent to the agents in New York to induce them to spend thousands of Euros and the agent's failure to disclose the test transfer of $55.00 were not material to a finding of probable cause. (Doc. 64-40-42). Mr. Marino

objects to these findings for these reasons.

It is exactly because the amount Mr. Marino transferred to the Bitcoin account is substantially less than the actual price structure being advertised to the agents, that the two omissions are material. The existence of images that do not constitute child sexual abuse material, paid for or not, serves as a reminder, as referenced in the Affidavit, that not everything, even on the site the Agents were dealing with, was illegal. Likewise, the test transfer of $55.00 by the Agents, which was not intended for the transfer of child sexual abuse material, would have afforded the Magistrate the chance to consider that the transfer of funds alone, particularly for an amount considerably less than the listed price structure, does not make it fairly probable that images of child sexual abuse material were transferred.[1]

### MR. MARINO OBJECTS TO THE R&R'S CONCLUSION THAT PROBABLE CAUSE WAS NOT STALE. (DOC 64-45).

The Court credits Agent Luedke's testimony about "collectors" in part because "it is well recognized by law enforcement across the country that many individuals who possess child sexual abuse material rarely dispose of it and tend to collect and hoard it." (Doc. 64-45). Mr. Marino objects. Mr. Marino does not dispute that this is a widespread belief among law enforcement personal. He does not dispute that this belief is recited in virtually every search warrant affidavit for child sexual abuse material. He also does not dispute, because these

---

[1] Contrary to the report's observation, Mr. Marino maintains that the facts described in support of a finding of reasonable suspicion in *US v. Touset*, 890 F.3d 1227 (11th Cir. 2018) do illustrate the absence of probable cause in this warrant. (Doc. 64, 42, n. 10). The point, Mr. Marino submits, is that there was considerably more evidence of a less stringent legal threshold, reasonable suspicion in *Touset*, than there was evidence of probable cause in this case. Although Mr. Marino does not presume to know whether the court in *Touset* would have found on those facts that probable cause existed; he believes it would not have. Similarly, contrary to the Court's position in the R &R, Mr. Marino contends the out of circuit cases discussed in the initial memorandum and reply are factual analogous examples of where the respective Court's analyses provide persuasive insight into the issues raised in this case. (Doc. 64-50 n.31).

representations in search warrant affidavits apparently have never been challenged or empirically tested in any way, that Courts have accepted these representations as true. However, believing it to be true without evidence does not make it so.

### MR. CONNOR'S STUDY SHOULD BE ACCORDED MORE PROBATIVE WEIGHT THAN THE AGENT'S BELIEFS

The R&R suggests Mr. Connor's study of 326 cases is of little probative value. It notes a small sample size and raises questions about his methodology. (Doc. 64-47). Yet despite its arguable limitations, Mr. Connor's study appears to be the only attempt to systematically study this issue. There is no evidence a forensic examiner or anyone else in any law enforcement agency has ever attempted to test the circular definition of "collectors" provided in the template affidavit. While Mr. Connor's study may not capture the universe of child pornography search warrant returns, it does much more to test the definition by the terms defined by law enforcement, than the antidotal accounts of the agent.

According to the R&R, there is a fair probability that Mr. Marino collected child pornography and rarely disposed of it based in part on the "well established hoarding habits of child pornography collectors." (R&R Doc. 64-46, citing *US v. Notman*, 831 F.3d 1084, 1088, (8th Cir. 2016)). There are two problems with this proposition. First as discussed, there does not appear to be an evidentiary basis for the premise that all, many, most, or more than half of the people who view child pornography collect and or hoard it.  Second, in this case, in this affidavit, there is no evidence that a one-time exchange of a low-fund transfer with a site which may be connected to a distributor of child sexual abuse material constitutes collecting or even a one-time viewing. Mr. Marino objects.

### AGENT LEUDKE'S TESTIMONY CONCERNING COLLECTORS WHILE NOT DELIBERATELY FALSE WAS MADE WITH RECKLESS DISREGARD FOR THE TRUTH

As the Court observes, the notion, the language about collectors in the standard search warrant affidavit template used by prosecutors and courts for years has no empirical support "has been apparently unchallenged (at least in court) until now." (Doc. 64-47). Mr. Marino does not contend that Agent Luedke's testimony concerning collectors was deliberately false. The Court also notes the drafting of the affidavit was a collaborative effort among other agents and the AUSA assigned to the case. Id. As such, all of these individuals, individually and institutionally, assume the basic responsibility to ensure that every representation made in an affidavit has empirical support. Mr. Marino contends this failure to do so amounts to a reckless disregard for the truth at an institutional level. Regrettably, as the affiant, Agent Leudke is the one who must shoulder the responsibility for this collective failure of law enforcement.

### THE GOOD FAITH EXCEPTION DOES NOT SAVE THE WARRANT

For the reasons described in the Amended Motion to Suppress, the Reply and in this pleading, Mr. Marino contends this affidavit was so facially void of probable cause the agent could not reasonably rely on it. A one-time low fund transfer to an account controlled by someone who may have provided illicit material to law enforcement does not alone make it fairly probable that evidence of a crime will be discovered at the subject's home on his electronic devices. Mr. Marino objects to the finding of probable cause and contends the good faith exception does not save this warrant.

### THERE ARE AT LEAST FOUR MATERIAL MISREPRESENTATIONS OR OMISSIONS IN THE AFFIDAVIT

Any probable cause which did exist was undermined by the misrepresentations and/or omissions of the agent. The omissions include: 1) failure to identify images which did not constitute child sexual abuse material, 2) failure to disclose the $55.00 test transfer to the site, 3) failure to identify any individual characteristics of a "collector" by Mr. Marino, and 4) the misrepresentations or the reckless disregard for the truthfulness of the paragraphs which suggest collectors hoard child pornography and/or that people who view child pornography serially delete the files, but law enforcement can find the evidence anyway. Each misrepresentation or omission is material. Individually and collectively, these misrepresentations/omissions make it impossible for this court to conclude the good faith exception applies to this case. Mr. Marino objects to any findings in the R&R to the contrary.

### CONCLUSION

WHEREFORE, the Defendant, Mark Marino, for the above-mentioned reasons respectfully moves this Court sustain the objections to the R&R and grant the Amended Motion to Suppress. (Doc. 47).

    Respectfully submitted,

    *S:// Thomas M. Bell*
    THOMAS M. BELL, #0615692
    301 West Bay Street, Suite 1460
    Jacksonville, Florida 32202
    Telephone (904) 354-0062
    Telecopier (904) 353-1315
    tbellesq@bellsouth.net
    Attorney for Defendant

## **CERTIFICATE OF SERVICE**

  I HEREBY CERTIFY that on June 18, 2021, I electronically filed the foregoing with the clerk of the Court by using CM/ECF system which will send a notice of electronic filing to Kelly Karase, A.U.S.A.

           *S:// Thomas M. Bell*
           Thomas M. Bell