UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

UNITED STATES OF AMERICA

v.  Case No. 3:20-cr-94(S2)-J-32JRK

MARK MANUEL ANGELES MARINO

**UNITED STATES' RESPONSE IN OPPOSITION TO DEFENDANT'S OBJECTIONS TO THE REPORT AND RECOMMENDATION**

The United States of America files this response in opposition to defendant's Objections to the Report and Recommendation (Doc. 67, filed on June 18, 2021) filed in this case on May 24, 2021 ("R&R") (Doc. 64). Because the R&R is both factually and legally correct, and for the reasons set forth below, this Court should overrule defendant's objections ("Objections"), adopt the R&R, and enter an Order denying defendant's Amended Motion to Suppress Physical Evidence and Statements (Doc. 47).

**A. Philippinegirls@secmail.pro Sent Already-Existing Child Sexual Abuse Material For Free and Requested Payment for Specially-Created Child Sexual Abuse Pictures and Videos**

In his objections, defendant argues that because the affidavit in support of the search warrant application did not explicitly state that child sexual abuse material, specifically five pictures or "pics," was available for $56.000, that probable cause to search for evidence of a crime, contraband, fruits of a crime and property designed for use, intended for use, or used in a crime was lacking. However, he omits facts

contained within the affidavit that support the finding of probable cause. Specifically, the affidavit quotes portions of an advertisement, specifically mentioning "OFFER 1" and the details of that offer, which was for a "meeting with girls aged 4-12 in Philippines," along with sordid activities to occur during the week. *See* Suppression Hearing Exh. 1 at 26. The affidavit continued to state, in reference to the contents of the advertisement, "Additional offers were also listed to include a 'Camshow' and a 'Video of the girl,' along with an offer to provide 'proof of the girl.'" *Id.* at 26-27.

The affidavit continues with a summary of the undercover investigation that revolves around communications an undercover agent ("UC") had with the email address Philippinegirls@secmail.pro.[1] Included in the summary of the investigation is reference to Philippinegirls@secmail.pro sending the UC an image of child sexual abuse material in the first responsive email. *Id.* at 27. The UC made an inquiry of "one night with the girl" and asked for a "pic," to which Philippinegirls@secmail.pro responded the same day by providing an image of child sexual abuse material, with a message, "Here isa photo." [*sic*]. *Id*. The UC had not sent any money to Philippinegirls@secmail.pro in advance of that transmission. The next message sent

---

[1] In previous filings, Philippinegirls@secmail.pro was identified as "The Email Account" for ease of reference. However, in light of the defendant's arguments, it is important to remind the Court of the significance of the use of the secmail.pro email service, as subpoena results from Coinbase showed the defendant referenced a secmail.pro email address, along with the notation "5pics" when sending Bitcoin over Coinbase to the same user who was the intended recipient of money for a "20 minute video of the girl," which in context was ordering a 20-minute video of the rape of the child.

2

from Philippinegirls@secmail.pro as described in the Affidavit was sent on December 19, 2019. *Id.* at 28. The UC had still not yet sent any money to Philippinegirls@secmail.pro. Once again, Philippinegirls@secmail.pro sent the UC child sexual abuse material, this time in the form of TOR browser links, one of which[2] led to a video that was a 3-minute video called "philippine girl 10yo" depicting a child laying on the floor masturbating, among other depictions of child sexual abuse. *Id.* at 28-29. Again on January 27, 2020, Philippinegirls@secmail.pro sent a message to the UC with the same two TOR links as in the December 19, 2019 message. *Id.* at 29. Still the UC had sent no money to Philippinegirls@secmail.pro. And Philippinegirls@secmail.pro sent yet another message on February 5, 2020, this time with three TOR links, which led the UC to fourteen images and a video. The video was more than 17 minutes in length and depicted a child acting on instruction of the recorder of the video removing her clothes and masturbating, including with a sex toy, on various occasions. Super imposed on the video is text across the screen advertising the child for various lurid acts and commenting on the child's body. *Id.* at 30. Philippinegirls@secmail.pro sent this 17-minute video to the UC, who still had not sent *any* money for receipt of this material.

Finally, after the UC requested a specific video of the child, on February 9, 2020, Philippinegirls@secmail.pro sent a message providing for payment for the

---

[2] The other led to an image that could not be opened.

specialized video, stating, "As soon as we see the money in, we will make the video. Let us know what you want to see her do and say during the video." *Id.* at 31.

As stated in the United States' Amended Sur-Reply (Doc. 62), there was **not one** instance described in the Affidavit in which Philippinegirls@secmail.pro sent pictures to the UC that did not include child pornography or links to child pornography. The first talk of money was after the UC had received several files of child sexual abuse material for free. The request for payment and the exchange of money was for a specially-produced video, tailor-made to satisfy the buyer.

The defendant's focus on the amount of €8,000 for a week with the child cited in the advertisement that is quoted in the Affidavit is misplaced. The advertisement established that its poster was someone who had children available for abuse. The Affidavit included the advertisement's offer for a "Camshow" and a "Video of the girl," as well as "proof of girl." The defendant correctly states that the particular sentence in the Affidavit does not reference that the price of these materials was $56, nor must it given the totality of the affidavit. Based on the UC investigation, Philippinegirls@secmail.pro sent child sexual abuse material for free. Philippinegirls@secmail.pro requested money to make a specific customized video of child sexual abuse. It follows, then, that if Philippinegirls@secmail.pro is sending visual depictions of child sexual abuse material for free and collecting money for the customized sexual abuse of children, the user is not requiring payment for child erotica.

4

B. **Agent Luedke's Testimony and the Case Law Establish that Agent Luedke's Experiences are Consistent with Individuals Retaining Child Pornography or Evidence Thereof and Thus the Probable Cause was Not Stale**

In his Objections, the defendant suggests that Agent Luedke could provide only one occasion where he executed a search warrant a year after a subject distributed child abuse material and still located child sexual abuse material on the subject's devices. However, a complete reading of paragraph IV.C.2 of the R&R reveals that Agent Luedke has found child sexual abuse material in eighteen out of the twenty child pornography cases he has worked in which he has sought a search warrant. Doc. 64 at 25. This amounts to 90% of the time. Agent Luedke was asked, "Why do you, as a trained investigator, expect to find child pornography when you go into a house seven, eight months later after the tip was initiated or after there's evidence of a download or after there's some triggering event?" Agent Luedke answered, "Because it's happened a number of times, specifically in several cases that I've had, where I have found child sexual abuse images or videos resident on that person's devices from an investigation that was four years old or a year old." (Doc. 48, "Tr." at 111-112). Agent Luedke's reference to a specific case from April 2019 was explicitly stated as *an* example. One. Though he had also referenced a more recent example. He also said he agreed that there were other similar instances that he knows of through his work as a case agent and in assisting other agents on their cases. *Id.* at 113. This wasn't just one anecdotal

5

instance where Agent Luedke found child pornography between seven or eight months after evidence of a download came to light.

This experience of Agent Luedke in his own cases and in that of his colleagues is consistent with conversations he has had with other experienced agents, as stated in the affidavit. Exh. 1 at 20. The cases further establish this point. R&R at 45-47. Because of the averments in the Affidavit, supported by the case law that includes courts in Florida and other parts of the country that have reached the same conclusion based on agent testimony in those locations, as well as Agent Luedke's experience and that of his colleagues that he testified to at the suppression hearing, Agent Luedke had probable cause to believe that there would be evidence of the child exploitation crimes he was investigating seven months after the defendant sent the Bitcoin transaction referencing secmail.pro and "5pics."

Further, this is more credible than the "study" Mr. Connor conducted. The defendant seems to suggest that because there is a study, though admittedly flawed, the study should be given more weight than the experience of agents who are consistently executing warrants as part of their duties and responsibilities. Simply because Mr. Connor's study may be the only study of its kind does not make it a valid one. And the testimony of the agents is not simply "antidotal" [anecdotal]. Rather, it is based on years of experience and findings across the country as set forth in the case law.

The defendant challenges Agent Luedke's answer to a question defense counsel asked that "there was no specific identifiable evidence that Mark Marino fit any of the characters of a collector or a hoarder of child pornography," to which Agent Luedke responded "Sure," and then "Yes, sir. I'm sorry." Tr. at 82. Discussion on this topic continued with Agent Luedke agreeing "in terms of the specific characteristics, at that point, no, we didn't have anything specifically." *Id.* at 82-84. The defendant claims that this is a "material omission" that should be given "great weight." However, it is contrary to logic and reason that one should include every fact that there is not specific evidence of in an affidavit. The defendant is suggesting that Agent Luedke should prove the negative. The Affidavit does not say that he had "specific identifiable evidence" that the defendant, Mark Manuel Angeles Marino, fit any of the characteristics. Rather, the section in the Affidavit pertaining to collectors and hoarders is a link in the chain. Because there was probable cause that there would be evidence of a crime, contraband, fruits of a crime and property designed for use, intended for use, or used in a crime based on the defendant's transaction seven months earlier, there was probable cause that it would still be there based on what the agent knows about the characteristics of individuals who collect child pornography. Based on even the preliminary examination of defendant's laptop, this was true. Doc. 1 at 5, ¶ 8 ("A preliminary examination of the HP Laptop conducted on scene by HSI computer forensic analyst Antonio Contes during the execution of the search warrant

7

revealed multiple video and still image files of child pornography resident on the HGST hard drive contained within the HP Laptop.").

### C. For the Reasons Stated in the R&R, the Response and Sur-Reply of the United States, and a Plain Reading of the Affidavit, Probable Cause Was Established

After reviewing the Affidavit, three Magistrate Judges found that the Affidavit contained sufficient evidence to establish probable cause. First, on June 16, 2020, the Honorable Monte C. Richardson issued a warrant based on his review of the Affidavit. Second, on August 26, 2020, the Honorable Patricia D. Barksdale issued a warrant to search a Discord Incorporated account that was granted after an application attaching and incorporating the Affidavit by reference, *inter alia*. Third, on May 24, 2021, the Honorable James R. Klindt issued his R&R, finding the Affidavit contained sufficient evidence to conclude the defendant's Bitcoin transaction on October 29, 2019 was sent in exchange for child sexual abuse material, and that the Affidavit established the user of the Philippinegirls@secmail.pro account sold child sexual abuse material, not child erotica. For reasons stated above and in briefing on this matter, it has been established that Philippinegirls@secmail.pro was selling child sexual abuse material, not child erotica. Put simply, the advertisements on the dark web and use of the secmail.pro email account as well as the multiple interactions the UC had with Philippinegirls@secmail.pro establish this. Further, there is evidence that the defendant's Bitcoin transaction went to the same user as the individual who would be receiving the money requested from the UC. Exh. 1 at 31-32 ("The 'cluster' containing

8

the Target Wallet and the Second Bitcoin Address subsequently transferred Bitcoin, in a single cospend transaction, into a single Bitcoin address, identified in the form of a unique series of letters and numbers, indicating that these addresses were controlled by the same user."); *see also* Hearing Exhs. 4-5. Sandwiched in the middle of the communication the UC had with Philippinegirls@secmail.pro, which began on September 16, 2019, was the defendant's October 29, 2019, Bitcoin transaction in which he references secmail.pro, the same email service used by Philippinegirls@secmail.pro, and 5pics. The Affidavit established that Philippinegirls@secmail.pro was giving away child pornography and selling customized depictions of child sexual abuse. Thus, there was probable cause that evidence of child exploitation crimes would be found at the location from where the defendant conducted the Bitcoin transaction. Exh. 1 at 32-33.

WHEREFORE, the United States respectfully requests that this Court (i) overrule defendant's Objections to the Report and Recommendation on defendant's motion to suppress (Doc. 67), (ii) adopt the Report and Recommendation (Doc. 64), and (iii) enter an order denying defendant's Amended Motion to Suppress Physical Evidence and Statements (Doc. 47).

    Respectfully submitted,

    KARIN HOPPMANN
    Acting United States Attorney

    */s/ Kelly S. Karase*
By:  KELLY S. KARASE
    Assistant United States Attorney
    USAO No. 134
    300 N. Hogan Street, Suite 700
    Jacksonville, Florida 32202
    Telephone:  (904) 301-6300
    Facsimile:  (904) 301-6310
    E-mail: Kelly.Karase@usdoj.gov

U.S. v. Mark Manuel Angeles Marino     Case No. 3:20-cr-94(S2)-J-32JRK

## CERTIFICATE OF SERVICE

I hereby certify that on July 20, 2021, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following:

Thomas M. Bell, Esq.

                                          */s/ Kelly S. Karase*
                                          KELLY S. KARASE
                                          Assistant United States Attorney