UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

UNITED STATES OF AMERICA

vs.                                                            CASE NO.: 3:20-cr-94(S2)-J-TJC-LLL

MARK MARINO
_____/

**DEFENDANT MARINO'S OBJECTIONS TO
THE PRESENTENCE REPORT, MOTION FOR DOWNWARD
DEPARTURE/VARIANCE, AND SENTENCING MEMORANDUM**

The Defendant, Mark Marino, by and through the undersigned counsel, pursuant to 18 U.S.C. §3553, Rule 32 of the Florida Rules of Criminal Procedure, and Local Rule 4.12 (Middle District of Florida), hereby files objections to the findings and sentencing recommendations in the Presentence Investigation Report (herein after "PSR"), moves for a downward departure/variance, and provides a sentencing memorandum. (Doc. 94).

**OVERVIEW**

Mr. Marino maintains that most of the evidence described in the Presentence Investigation Report and introduced at the bench trial by means of the stipulated factual basis was obtained in violation of the 4th Amendment to the United States Constitution and should have been suppressed/excluded from use at trial or sentencing. That said, Mr. Marino fully acknowledges the horrific nature and

seriousness of these offenses and the significant sentence that awaits him.

A lonely young man recently enters this country to work. He works at the local Amazon distribution warehouse. He lives with his mother, stepfather, and sister in Jacksonville. On the surface he seems like a rather ordinary young man. But at night he goes online to a dark web site where he engages in a series of virtually unspeakable exchanges with sex traffickers from his native country, the Philippines, to sexually exploit children. The forensic review of Mr. Marino's electronic devices reveals not only a considerable amount of prohibited material but a trove of other information that may explain in part his penchant for child sexual abuse material. That other evidence consists of history of internet gaming related activity and a significant collection of anime, computer generated animation. This evidence suggests Mr. Marino struggled to assimilate with peers not only in his own age group but in any age group. His fascination with computer generated cartoons suggests he may have struggled to appreciate that the people on the other end of those dark web connections were real live human beings.

Yet, as he must, Mr. Marino understands this Court now faces the difficult responsibility of balancing all the 18 U.S.C. §3553 factors and deciding a punishment that "is sufficient, but not greater than necessary" to satisfy the purposes of 18 U.S.C. §3553. This memorandum is to assist the Court with that responsibility.

First, it discusses specific outstanding objections to the proposed advisory guidelines level. It then outlines factors primarily concerning the characteristics of the defendant, whether characterized as a departure or variance, which warrant a

sentence well below the advisory guidelines range, if the Court overrules, or sustains, the guideline challenges. Finally, it discusses the reasons why the Court should all but disregard the advisory guidelines range.

## **GUIDELINE RELATED OBJECTIONS**

The PSR correctly notes "Counts 1 through 6 involve the same child victim and Count Seven involves multiple identified and unidentified child victims." (Doc. 94-18, paragraph 36). Yet the report then recommends that there are four distinct groups for guideline calculation purposes; "Counts 2, 3, and 4 involve separate, distinct instances of harm to the same child victim." (Doc. 94-18 paragraph 37). However, Mr. Marino contends Note 7 to U.S.S.G. §2G2.1 controls instances when there is only one victim. Note 7, in sum, provides "where there are multiple counts involving different minor victims, the ordinary grouping rules do not apply." This implies where, as here, there is only one minor, the usual rules for grouping closely related counts should apply.

The bottom line is, Mr. Marino contends, there should be only two groups. One group for Counts 1-6. A second group is for Count 7. Mr. Marino agrees the PSR's analysis set forth for Group 3 provides the basis for determining the adjusted offense level, but that analysis should be used for Counts 1-6, which then constitutes Group 1. In other words, commentary note 7 suggests the Court should use U.S.S.G. §2G2.1 to determine the adjusted offense lever for Counts 1-6 because it fully accounts for "the total amount of harm or loss or some other measure of aggregate

harm" and "the offense behavior is ongoing or continuous" per the dictates of U.S.S.G. §3D1.2(d) where there is only one victim, despite the chart in in §3D1.2(d) which appears to exclude §2G2.1 and the response of the Probation Office in the addendum to the PSR.(Doc. 94-40). U.S.S.G. §3D1.2 commentary note 3 begins "under subsection (a) counts are to be grouped together when they represent a single injury or are part of a single criminal episode or transaction involving the same victim". Commentary note 6 begins "subsection (b) likely will be used with the greatest frequency…." As a result, Mr. Marino objects to the recommendations at paragraphs 42-56 (Groups 1 and 2) of the calculations.

For the Group 3 recommendations made in the PSR, Mr. Marino continues to object to the use of computer enhancement at paragraph 61. (Doc. 94-20). My long-standing position is the use of computers is virtually inherent (ubiquitous some argue) to these offenses. A two-level enhancement for use of computer only raises the guideline floor without assisting the court in determining the sentence. Removing the computer enhancement nets an adjusted offense level of 40 rather than 42 at paragraph 65.

For the Group 4 (Count 7) recommendations, Mr. Marino objects to the five-level pattern enhancement of paragraph 69 and/or the same restyled five-level recommendation at paragraph 80 as a Chapter 4 enhancement. In short, one or the other but not both, because counting the pattern enhancement twice "adds nothing to the purposes of the guidelines" and constitutes double counting. Mr. Marino also objects to the two-level enhancement for use of computer in paragraph 70. This

produces an adjusted offense level of either 29 or 34, depending on the outcome of the five-level pattern enhancement.

Mr. Marino's contention is that there are two, not four, groups for the grouping calculations required at paragraphs 76, 78, and 79. Using the proposed recommendations in the PSR for purposes of discussing the grouping calculations, the greater adjusted offense level of 42 (Group 3/my Group 1) and 36 (Group 4/my Group 2) results in 1.5 units, or a one-level increase to the adjusted offense level.

If the five-level enhancement is applied to the possession count (Count 7) and not applied at paragraph 80 as a Chapter 4 enhancement, the total offense level is 41 (42+1-2), PSR Group 3. With a criminal history category 1, this produces an advisory guideline range of 364-405 months. Mr. Marino uses the offense level recommendations in the Report to illustrate his calculations of the grouping rules. The result would be lower if the Court sustains any of my objections to the offense level 42 recommendation in Group 3.

Mr. Marino recognizes the recent case of *United States v. Fox,* 926 F. 3d 1275 (11th Cir 2019) and others suggest the result should be different on the application of the two pattern enhancements. However, much like the distribution and use of computer enhancements, double counting the pattern enhancement only reveals how little this entire guideline exercise does to help the Court fashion an appropriate sentence.

One thing that is not in dispute is that under any construction of the admittedly complex guideline analysis in this case, the total offense level is in

the stratosphere and likely off the charts. There are, of course, 15-year statutory minimum sentences which must be imposed for Counts 1-4 as well.

## **DEPARTURE/VARIANCE**

One of the many difficulties for this Court at sentencing is balancing the weight of the defendant's history and characteristics pursuant to 18 U.S.C. §3553(a) against the policy pronouncements of Chapter 5 of the guidelines commission which explicitly attempts to limit the weight the Court should give to those characteristics (except for criminal history). Chapter 5 of the Guidelines generally provides that many personal characteristics such as age, employment history and family ties, which typically could be considered factors and mitigating circumstances under 18 U.S.C. §3553(a), are considered "ordinarily not relevant" for determining departures by the Guidelines.

Sadly, in one sense, but helpful in another sense, the PSR summary of Mr. Marino's personal history is rather unremarkable. A young man with no criminal history follows his family from the Philippines to work in the states. He and his sister purchase a home where their mother and stepfather live with them. His social life, as discussed earlier, largely consists of playing games and participating in anime related activities on the internet. But, regardless of whether any personal characteristics stand out or warrant a departure or variance from the guideline regime standing alone, one issue which always merits consideration of a downward departure or variance in these types of cases is the overly punitive nature of the

guidelines for child sexual abuse related conduct.

## **MEMORANDUM OF LAW**

Mr. Marino's position is the draconian child pornography guideline regime should be given little to no weight.

As Judge White in *United States v. Walters* 775 F 3d 778(6th Cir 2015) wrote in a concurring opinion, "competent counsel should be expected to bring to the district court's attention that the guidelines do not, as in other contexts, reflect the presumed superior expertise and breadth of information in the Commission and, in fact, are contrary to the Commission's considered judgment." *US v. Walters, supra*.

Judge Merritt, in a dissenting opinion in *Walters,* argued the Guidelines in child pornography cases violated the Eighth Amendment to the United States Constitution:  He wrote:

> "There is a partial solution available. The Supreme Court has recently summarized in *Miller v. Alabama,* 132 S. Ct. 2455, 2463 (2012), the constitutional principles that should guide us when a sentence is extreme and lacking any "rational basis," as the Sentencing Commission and other experts in the field have found:
>
> The Eighth Amendment's prohibition of cruel and unusual punishment "guarantees individuals the right not to be subjected to excessive sanctions."  That right, we have explained, "flows from the basic 'precept of justice that punishment for crime should be graduated and proportioned' to both the offender and the offense."  "[T]he concept of proportionality is central to the Eighth Amendment." And we view that concept less through a historical prism than according to "the evolving standards of decency that mark the progress of a maturing society.' (Omitting citations.) *Id*.

The basis for his strongly held belief included:

> Many of the groups of officials and experts who have looked into the problem of Internet child porn have reached the conclusion that the sentencing guidelines that the District Court and our Court have now enforced in this case should be greatly reduced. Most importantly, these groups include the Sentencing Commission itself, which has conducted an extensive study and then issued a 350-page Report in 2012 entitled "Federal Child Pornography Offenses" [available at: *http://www.ussc.gov/news/congressional-testimony-and-reports/sex-offense-topics/report-congress-federal-child-pornography-offenses*]. . . . The report is based in part on the refusal of a sizeable majority of judges to follow the guidelines and the opinion of experts in the field, including psychologists, medical experts and legal scholars who have studied the problem. The Commission's study arrived at the conclusion that the present child porn guidelines have "no rational basis," are "outmoded," do not "distinguish adequately among offenders based on their degrees of culpability," and have "enhancements," like the ones in this case, that are "outmoded and disproportionate." The disagreement with the guidelines for nonproduction offenders is widespread." *United States v. Walters*, ____ F. 3d. ____, p. 15-17 (6th Cir. 2015), J. Merritt dissenting.

Yet the fear of sex offenders based on outdated, or no science persists. In early March 2017, a *New York Times* article discussed this ongoing problem. See, "Did the Supreme Court Base a Ruling on a Myth?" by Adam Liptak, *New York Times*. (https://www.nytimes.com/2017/03/06/us/politics/supreme-court-repeat-sex-offenders.html). The article notes "there is vanishingly little evidence of the Supreme Court's assertions that convicted sex offenders commit new offenses at very high rates. The story behind the notion, it turns out, starts with a throw-away line in a glossy magazine." *Id*. The *Times* article then quotes a 2015 Constitutional Commentary article which opines the Supreme Court's view: "Its endorsement has transformed random opinions by self-interested, non-experts into definitive studies to justify law

and policy, while real studies by real scientists go unnoticed." *Id*. See Ellman, Ira Mark and Ellman, Tara, ""Frightening and High": The Supreme Court's Crucial Mistake About Sex Crime Statistics" (2015). Constitutional Commentary. 419. https://scholarship.law.umn.edu/concomm/419.

Other recent scientific studies include a 2014 Justice Department report which found, "sex offenders generally have low overall recidivism rates for crimes. But they are more likely to commit additional sex offenses than other criminals." *Id*. See U. S. Department of Justice Office of Sex Offender Sentencing, Monitoring, Apprehending, Registering, and Tracking, "Sex Offender Management Assessment and Planning Initiative" (2014). Available at: https://smart.ojp.gov/somapi/initiative-home.

More recent studies yield similar findings.  See, "How Dangerous Are They? An Analysis of Sex Offenders under Federal Post-Conviction Supervision." Thomas Cohen, Michelle L. Spidell, Probation at Pre-Trial Services Office, Administrative Office of the U. S. Courts, Federal Probation, September 2016. https://www.uscourts.gov/federal-probation-journal/2016/09/how-dangerous-are-they-analysis-sex-offenders-under-federal-post.

The arbitrary and capricious nature of the guidelines as to sex offenses in general, and child pornography offenses in particular, is never more obvious and punitive than in the enhancements applied in this case. Were the Court to follow the guideline recommendations, a young man with no criminal history starts out with a recommended range of between 324-425 months. (Doc. 94). This range is simply

disproportionately high even for these extraordinarily serious offenses. Under the best-case scenario, Mr. Marino must be sentenced to 15 years which is an incredibly significant sentence.

One resource the court may find useful in determining a proportionate sentence in this case is the most recent publication from the Guidelines Commission on production related offenses. The recently released study found the average sentence for arguably similar offenses, production offenses where the victim was not present with the offender, was 234 months, See USSG, Federal Sentencing of Child Pornography: Production Offenses, page 44, (October 2021) https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2021/20211013_Production-CP.pdf. Also of note: courts granted non-government sponsored downward variances in 36.1 percent of production related sentences. Id page 22. There is nothing about these offenses or Mr. Marino individually which warrants a sentence above the national average for similar offenses.

It is well-settled that a district court should begin all sentencing proceedings by correctly calculating the applicable guidelines range, *Gall v. US,* 552 U.S. 38, 128 S. Ct. 586, 169 L. Ed. 2d 445 (2007). However, the sentencing court "may not presume that the guideline range is reasonable" *Id*. at 590. Otherwise, the advisory, rather than mandatory, role of the guidelines, which was found critical to the constitutional issues raised in *Booker,* is undermined. *United States v. Booker*, 543 U.S. 220, 125 S. Ct. 738, 160 L. Ed. 2d. 621 (2005).

The guidelines help advise, but do not mandate, a reasonable sentence under 18 U.S.C. §3553. The Court stated in *Gall*, "after giving both parties the opportunity to argue for whatever sentence they deem appropriate, the district judge should then consider all of the §3553(a) factors to determine whether they support the sentence requested by a party." *Id.* at 597. The Supreme Court recently reaffirmed, "the long-standing tradition in American law, dating back to the dawn of the Republic, that a judge at sentencing considers the whole person before him or her "as an individual," *Concepcion v. United States* 142 S. Ct. 2389, 2395, 213 L. Ed. 2d 731 (2022) quoting *Koon v. United States* 518 U. S. 81, 116 S. Ct. 2035, 135 L. Ed. 2d 392 (1996).

The operational litmus test for the Court is ultimately and always that a sentence "shall be sufficient, but not greater than necessary to comply with the purposes of [18 U.S.C. §3553] and substantively reasonable." *US v. Early*, 686 F.3d 1219 (11th Cir. 2012).

Mr. Marino is confident this Court will impose a substantively reasonable sentence.

## CONCLUSION

The statutory mandated minimum sentence is fifteen years, 180 months, in prison. None of the other 18 U.S.C. §3553 factors suggest a sentence of more than 234 months is necessary to satisfy the purposes of the statute.

Respectfully submitted,

*S:// Thomas M. Bell*

THOMAS M. BELL
Florida Bar No.: 0615692
301 West Bay Street, Suite 1460
Jacksonville, Florida, 32202
Telephone (904) 354-0062
tbellesq@bellsouth.net
Attorney for the Defendant

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 21st day of September 2022, I electronically filed the foregoing with the clerk of the Court by using CM/ECF system which will send a notice of electronic filing to the following: Kelly Karase, A.U.S.A.

*S:// Thomas M. Bell*