IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

UNITED STATES OF AMERICA,

Plaintiff,

vs. Case No. 3:20-mj-1221-MCR

MARK MANUEL ANGELES MARINO,

Defendant.

---

UNITED STATES OF AMERICA,

Plaintiff,

vs. Case No. 3:20-cr-75-J-34MCR

CODY RAY AYERS,

Defendant.

---

DIGITALLY RECORDED INITIAL APPEARANCE
BEFORE THE HONORABLE MONTE C. RICHARDSON
UNITED STATES MAGISTRATE JUDGE
June 17, 2020
3:05 p.m.
Courtroom No. 5C

COURT REPORTER:

Shannon M. Bishop, RDR, CRR, CRC
221 North Hogan Street, #150
Jacksonville, Florida 32202
Telephone: (904)549-1307
dsmabishop@yahoo.com

(Proceedings reported by mechanical stenography; transcript produced by computer.)

A P P E A R A N C E S

GOVERNMENT COUNSEL:

**KELLY KARASE, ESQ. (MARINO)**
**ARNOLD CORSMEIER, ESQ. (AYERS)**
U.S. Attorney's Office
300 North Hogan Street, Suite 700
Jacksonville, Florida 32202

DEFENSE COUNSEL:

**LISA CALL, ESQ. (MARINO)**
**SUSAN G. YAZGI, ESQ. (AYERS)**
Federal Public Defender's Office
200 West Forsyth Street, Room 1240
Jacksonville, Florida 32202

P R O C E E D I N G S

June 17, 2020 3:05 p.m.

- - -

COURT SECURITY OFFICER: All rise. All rise. This Honorable Court is now in session.

Please be seated, everyone.

THE COURT: Agent.

Ms. Yazgi, do I have you on line there?

Ms. Yazgi, can you hear me?

MS. YAZGI: Did you say Ms. Yazgi?

THE COURT: Yes.

MS. YAZGI: Oh, I'm sorry.

THE COURT: I want to make sure you're there.

MS. YAZGI: Yes, I can hear you.

THE COURT: All right. We're having some technical problems this morning. I want to make sure everybody can hear.

MS. YAZGI: I can hear.

THE COURT: All right. We're here for two matters this afternoon. The first matter is Case No. 3:20-cr-75-J-34MCR, and Case No. 3:20-mj-1221-MCR, *United States of America versus Tony Ayers* and *United States of America versus Mark Manuel Marino*.

And who speaks for the United States?

MR. CORSMEIER: Good afternoon, Your Honor. In Mr. Ayers' case, Arnold Corsmeier on behalf of the United

States.

THE COURT: Welcome.

MS. KARASE: Good afternoon, Your Honor. With respect to the case against Mr. Marino, Kelly Karase on behalf of the United States.

THE COURT: Welcome, Counsel.

And we're here for initial appearances in both cases. I'll start with Mr. Ayers.

Mr. Ayers, what's your full name, sir?

DEFENDANT AYERS: First name Cody, middle name Ray, R-a-y, last name Ayers, A-y-e-r-s.

THE COURT: All right, sir. And how old are you?

DEFENDANT AYERS: 27.

THE COURT: What's your date of birth?

DEFENDANT AYERS: April the 23rd, 1993.

THE COURT: What's your home address?

DEFENDANT AYERS: 309 Nixon Street.

THE COURT: Is that in Jacksonville, Florida?

DEFENDANT AYERS: Yes, sir, Jacksonville, Florida.

THE COURT: How much education have you completed?

DEFENDANT AYERS: Some college.

THE COURT: And are you under the influence of any drugs, alcohol, or intoxicants?

DEFENDANT AYERS: No, sir.

THE COURT: Are you taking any medications?

DEFENDANT AYERS: No, sir.

THE COURT: Have you used drugs, alcohol, or medication during the last 48 hours?

DEFENDANT AYERS: No, sir.

THE COURT: Are you seeing a physician or psychiatrist?

DEFENDANT AYERS: No, sir.

THE COURT: Have you ever been treated for a mental illness?

DEFENDANT AYERS: No.

THE COURT: All right. So you understand where you are, what you're doing, and the importance of this proceeding?

DEFENDANT AYERS: Yes, sir.

THE COURT: Mr. Marino, same questions.

What's your full name, sir?

DEFENDANT MARINO: My first name is Mark, and then second name is Manuel, and then my last name is Marino.

THE COURT: All right, sir. How old are you?

DEFENDANT MARINO: I'm 25.

THE COURT: And what's your date of birth?

DEFENDANT MARINO: It's December 24, 1994, sir.

THE COURT: And what is your home address?

DEFENDANT MARINO: It's 6936 Longleaf Branch Drive.

THE COURT: Is that in Jacksonville?

DEFENDANT MARINO: Yes, sir.

THE COURT: And how much education have you completed?

DEFENDANT MARINO: Some college, too, sir.

THE COURT: All right. Are you under the influence of any drugs, alcohol, or intoxicants?

DEFENDANT MARINO: No, sir.

THE COURT: Are you taking any medications?

DEFENDANT MARINO: No, sir.

THE COURT: Have you used drugs, alcohol, or medications during the last 48 hours?

DEFENDANT MARINO: No, sir.

THE COURT: Are you seeing a physician or a psychiatrist?

DEFENDANT MARINO: No, sir.

THE COURT: Have you ever been treated for a mental illness?

DEFENDANT MARINO: No, sir.

THE COURT: All right. So you understand where you are, what you're doing, and the importance of this proceeding?

DEFENDANT MARINO: Yes, sir.

THE COURT: All right. You both need to listen. This hearing is to advise you of the charge or charges against you, the rights that you have, and what will follow, and to consider the issue of bail. You will not be called upon to plead to your respective charge or charges at this time.

In your case, Mr. Marino, a complaint has been filed against you.

And, Mr. Ayers, an indictment has been charged against you.

I'll ask that the prosecutors advise you of what the charge or charges are and the penalty involved. So I want you to listen carefully.

Mr. Corsmeier.

MR. CORSMEIER: In Mr. Ayers' case, there is a -- there is a five-count indictment against him. They each charge drug offenses.

Count One charges that on or about August 6th of 2019 in Duval County, in the Middle District of Florida, that the defendant did knowingly and intentionally distribute and possess with intent to distribute a controlled substance, which violation involved 5 grams or more of methamphetamine, and is, therefore, punished under 21 -- 21, U.S.C., Section 841(b)(1)(B). And that's in violation of 21, U.S.C., Section 841(a)(1) and (b)(1)(B).

The maximum penalties for that offense -- and these are also the maximum penalties for all the other counts except Count Three. There are minimum and maximum penalties.

The minimum -- there's a minimum mandatory term of imprisonment of five years up to a maximum term of imprisonment of 40 years.

There's a fine of up to $5 million, or both the term of imprisonment and a fine.

Any term of imprisonment would be followed by at least four years of supervised release. And a violation of a term or condition of supervised release could result up to three years of additional imprisonment, as well as a possibility of an additional term of supervised release. And there's a $100 special assessment.

Count Two charges that on or about October 30th of 2019, in Duval County, in the Middle District of Florida, that the defendant did knowingly and intentionally distribute and possess with intent to distribute a controlled substance, which violation involved 5 grams or more of methamphetamine, and is, therefore, punished under 21, U.S.C., Section 841(b)(1)(B). And that is in violation of 21, U.S.C., Section 841(a)(1) and (b)(1)(B).

And as I mentioned, the minimum and maximum penalties for that offense are the same as for the offense alleged in Count One.

Count Three charges that on or about November 13, 2019, in Duval County, in the Middle District of Florida, that the defendant did knowingly and intentionally distribute and possess with intent to distribute a controlled substance, which violation involved 5 grams or more of methamphetamine, and is, therefore, punished under 21, U.S.C., Section 841(a)(1)(A).

And that is in violation of 21, U.S.C., Section 841(a)(1) and (b)(1)(A).

The minimum and maximum penalties for that offense are a mandatory term of imprisonment of ten years, up to a life term of imprisonment, a fine of up to $10 million, or both the term of imprisonment and a fine.

Any term of imprisonment would be followed by at least five years of supervised release. And a violation of a term or condition of supervised release could result in up to five years of additional imprisonment, as well as the possibility of an additional term of supervised release. And, again, there's the $100 special assessment.

Count Four charges that on or about December 1st, 2019, in Duval County, in the Middle District of Florida, that the defendant did knowingly and intentionally possess with intent to distribute a controlled substance, which violation involved 5 grams or more of methamphetamine, and is, therefore, punished under 21, U.S.C., Section 841(b)(1)(B), in violation of 21, U.S.C., Section 841(a)(1) and (b)(1)(B).

And, again, the minimum and maximum penalties for that offense are the same as those that I recited for Count One.

Count Five charges that on or about January 31, 2020, in Baker County, in the Middle District of Florida, the defendant did knowingly and intentionally distribute and

possess with intent to distribute a controlled substance, which violation involved 5 grams or more of methamphetamine, and is, therefore, punished under 21, U.S.C., Section 841(b)(1)(B), in violation of 21, U.S.C., Section 841(a)(1) and (b)(1)(B).

And, again, that count is punishable by the same minimum mandatory and maximum penalties as I recited for Count One.

Cumulatively, if the defendant were convicted on all counts and sentenced consecutively on all counts, he could receive cumulative total maximum penalties of a minimum mandatory term of imprisonment of 10 years up to life, plus 160 years, a fine of up to $30 million, or both the term of imprisonment and a fine.

Any term of imprisonment would be followed by at least five years of supervised release. And a violation of a term or condition of supervised release could result in up to 17 years of additional imprisonment, as well as an additional term of supervised release. And there's a total of $500 in special assessments.

There is also a forfeiture provision which provides that as a result of the violations alleged that the defendant shall forfeit to the United States any property constituting or derived from any proceeds obtained as a result of a violation and any property used or intended to be used to commit the violation, and for the forfeiture of substitute property if

that described property is somehow beyond the jurisdiction of the Court as a result of some act or omission of the defendant. However, there is no specific property that the government is aware of right now for forfeiture.

THE COURT: Thank you, Counsel.

Mr. Ayers, do you understand the charges against you in the indictment?

DEFENDANT AYERS: Yes, sir.

THE COURT: And do you also understand the maximum penalties possible?

DEFENDANT AYERS: Yes, sir.

THE COURT: Ms. Karase?

MS. KARASE: Mr. Marino, you've been charged by a criminal complaint with one count of violating Title 18, United States Code, Section 2252(a)(2).

It alleges that on or about -- or in or about October 2019 in the county of Duval that you did receive visual depictions using any means and facility of interstate and foreign commerce by any means, that is, via the internet, when the production of the visual depictions involved the use of a minor engaging in sexually explicit conduct and the visual depictions were of such conduct.

If convicted of this offense, you face a mandatory minimum term of five years' imprisonment, up to 20 years, a fine of up to $250,000, a period of supervised release of at

least five years, up to life.

If you violate supervised release, you could be sent back to prison for up to an additional two years, or a mandatory minimum of five years, up to life, depending on the nature of the violation. And there's a mandatory special assessment in the amount of $100 that would be due upon the conviction of the offense.

Section 2259A of Title 18 also provides for a special assessment in the amount of $35,000. And if you are deemed to be non-indigent, you could face an additional $5,000 special assessment.

You could be required to pay restitution in the amount of $3,000 per victim of your offenses. And you may be required to register as a sex offender and be subject to immigration consequences as a result of your not being a citizen of the United States.

And, Your Honor, the United States has provided consular notification of Mr. Marino's arrest.

THE COURT: Very well.

Mr. Marino, do you understand the charge in the complaint against you?

DEFENDANT MARINO: Yes, sir.

THE COURT: And do you also understand the maximum penalties possible?

DEFENDANT MARINO: Yes, sir.

THE COURT: Okay. I need both of you to listen as I advise you of your rights. You both have a constitutional right to remain silent. You don't have to make any statement, nor do you have to give a statement at any time to any law enforcement officer.

Do you understand your right to remain silent, Mr. Ayers?

DEFENDANT AYERS: Yes, I do.

THE COURT: Mr. Marino?

DEFENDANT MARINO: Yes, I do.

THE COURT: You both are represented by an attorney in all proceedings in this case.

Can you afford to hire your own attorney, Mr. Ayers?

DEFENDANT AYERS: No, I cannot afford one.

THE COURT: Mr. Marino?

DEFENDANT MARINO: I don't know about my parents, because I -- I still rely on my parents.

THE COURT: I need you to speak up a little louder.

DEFENDANT MARINO: I still -- I still rely on my parents, so I don't know what's their plan.

THE COURT: Do you wish to -- the Court to determine whether you qualify for court-appointed counsel?

DEFENDANT MARINO: What, sir, again?

THE COURT: Do you wish the Court to determine whether you qualify for court-appointed counsel?

(Counsel confers with Defendant Marino.)

MS. CALL: Your Honor, this is Lisa Call of the Federal Defender's Office. I asked the question as: Do you want the Court to give you an attorney today? And then --

THE COURT: All right.

MS. CALL: And if there's another matter that comes up, then the Court can address that later.

THE COURT: That makes sense.

I have your financial affidavits. Let me know if your signature is on the affidavits.

DEFENDANT MARINO: Thank you, ma'am.

DEFENDANT AYERS: Yes, Your Honor. My signature is on the affidavit.

THE COURT: Mr. Marino, is that your signature, sir?

DEFENDANT MARINO: Yes, sir, it's it.

THE COURT: All right. I need to place you under oath.

Madam Deputy.

COURTROOM DEPUTY: Raise your right hands, please, to be sworn in.

Do you solemnly swear that all the statements you're about to make related to your financial status will be the truth, the whole truth, and nothing but the truth, so help you God?

Mr. Ayers?

DEFENDANT AYERS: Yes, I do.

COURTROOM DEPUTY: Mr. Marino?

DEFENDANT MARINO: Yes, I do.

THE COURT: All right. Mr. Ayers, I do find you qualify for court-appointed counsel.

And will counsel state appearance for the record.

MS. YAZGI: Susan Yazgi with the Federal Defender's Office.

THE COURT: Welcome, Ms. Yazgi.

With regard to Mr. Marino, I will appoint counsel for the purposes of this hearing.

And will counsel state her appearance for the record.

MS. CALL: Good afternoon, Your Honor. Lisa Call of the Federal Defender's Office.

THE COURT: Welcome. And what's the government's position regarding bail in both cases, Mr. Corsmeier?

MR. CORSMEIER: Your Honor, in Mr. Ayers' case we do seek detention pending the resolution of the case. And we'll ask for a continuance of the detention hearing to some time within the next three days -- three working days, as allowed to the government under the statute.

THE COURT: Ms. Karase?

MS. KARASE: The same with respect to Mr. Marino, Your Honor. The United States does seek detention. And I would request a continuance of the detention hearing.

THE COURT: When can we set these matters for detention hearings, Madam Deputy?

COURTROOM DEPUTY: If the defendants will be at the hearing --

MS. YAZGI: Can I be heard real quick?

THE COURT: Yes.

MS. YAZGI: I am going to have to be downtown at a sentencing hearing on Monday at 11 o'clock. Could we do this Monday afternoon?

MS. CALL: Your Honor, I was going to ask the same on behalf of Mr. Marino. I'm not sure which jail he'll be at or how quickly I'll be able to see him. So Monday would be the best for me also.

THE COURT: All right. Madam Deputy?

COURTROOM DEPUTY: And, again, if the defendants are appearing virtually, it would have to be late. So 3:45 in the afternoon?

THE COURT: Ms. Call, how does that look?

MS. CALL: Your Honor, I know that there are status conferences on Monday, so that will be 3:00 and 3:30. It will just depend on how quickly everything is finished up.

COURTROOM DEPUTY: 4 o'clock?

THE COURT: 4 o'clock?

MS. CALL: I believe that will work, Your Honor.

THE COURT: Ms. Yazgi?

MS. YAZGI: It works for me. I don't have any statuses on Monday afternoon. So that works fine.

THE COURT: All right. We'll set both hearings for Monday at 4 o'clock for detention hearings.

Anything else, Ms. Karase?

MS. KARASE: Yes, Your Honor. I would request a setting for a preliminary hearing as well, as I do anticipate, subject to waiver, having a preliminary hearing in this matter.

THE COURT: We'll set it at that time as well.

MS. KARASE: Yes, Your Honor.

THE COURT: Mr. Corsmeier, anything else?

MR. CORSMEIER: No, Your Honor.

THE COURT: Ms. Yazgi?

MS. YAZGI: You said Monday at 4 o'clock?

THE COURT: Correct.

MS. YAZGI: Thank you. Nothing else.

THE COURT: Ms. Call -- Ms. Call, anything else?

MS. CALL: No, Your Honor.

THE COURT: All right. Court will be in recess.

COURT SECURITY OFFICER: All rise.

(The digitally recorded proceedings concluded at 3:22 p.m.)

\- - -

**CERTIFICATE**

UNITED STATES DISTRICT COURT )
)
MIDDLE DISTRICT OF FLORIDA )

I hereby certify that the foregoing transcript is a true and correct computer-aided transcription from the official electronic sound recording of the proceedings in the above-entitled matter.

DATED this 16th day of December, 2022.

s/Shannon M. Bishop

Shannon M. Bishop, RDR, CRR, CRC