IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

UNITED STATES OF AMERICA,     Jacksonville, Florida

           Plaintiff,     Case No. 3:20-cr-94-TJC-LLL

  vs.               July 15, 2020

MARK MANUEL ANGELES MARINO,   10:12 a.m.

          Defendant.    Courtroom No. 5A
_____


DIGITALLY RECORDED ARRAIGNMENT HEARING
BEFORE THE HONORABLE JOEL B. TOOMEY
UNITED STATES MAGISTRATE JUDGE


GOVERNMENT COUNSEL:

     **D. RODNEY BROWN, ESQ.**
     U.S. Attorney's Office
     300 North Hogan Street, Suite 700
     Jacksonville, Florida  32202


DEFENSE COUNSEL:

     **THOMAS M. BELL, ESQ.**
     Thomas M. Bell, PA
     301 West Bay Street, Suite 1460
     Jacksonville, Florida  32202


COURT REPORTER:

     Shannon M. Bishop, RDR, CRR, CRC
     221 North Hogan Street, #150
     Jacksonville, Florida  32202
     Telephone:  (904)549-1307
     dsmabishop@yahoo.com


    (Proceedings recorded by mechanical stenography;
transcript produced by computer.)

1                    P R O C E E D I N G S

2    July 15, 2020                              10:12 a.m.

3                         - - -

4         COURT SECURITY OFFICER:  Court is now in session, the

5    Honorable Joel B. Toomey presiding.

6         Please be seated.

7         THE COURT:  We're here in the case of the *United*

8    *States versus Mark Manuel Angeles Marino*, Case No. 3:20-cr-94.

9    And we're here for arraignment.  We're doing the arraignment by

10   videoconference.

11        And Mr. Bell is present here in the courtroom.

12        And I understand Mr. Brown is on the telephone.

13        Is that correct, Mr. Brown?

14        MR. BROWN:  Yes, Your Honor.  Good morning.  This is

15   Rodney Brown, standing in for Kelly Karase on behalf of the

16   United States.

17        THE COURT:  Okay.  I understand the defendant's

18   mother is also observing by telephone.

19        All right.  Madam Clerk, if you could swear in the

20   defendant.

21        COURTROOM DEPUTY:  Please raise your right hand.

22        Do you solemnly swear or affirm the answers you will

23   give during this proceeding will be the truth, the whole truth,

24   and nothing but the truth?

25        THE COURT:  Did you hear that, Mr. Marino?

1           COURTROOM DEPUTY:  Mr. Marino?

2           THE COURT:  I lost the video connection here.

3      (Judge confers with courtroom deputy.)

4           THE COURT:  Maybe we should just do it by telephone.

5           Do you have any objection to that, Mr. Bell?

6           MR. BELL:  No.  Would the -- will the family be able

7    to listen in?  Or will we just have to do it -- we'll do the

8    best we can, Judge.

9           THE COURT:  Yeah.  I don't know why they couldn't.

10   We just might have to set it up differently.

11          MR. BELL:  Okay.

12          THE COURT:  I don't know if they'll be able to do

13   that, but whichever.

14          Tracee, if we can't do it by video, we'll do it by

15   telephone.

16          COURTROOM DEPUTY:  Okay.

17          THE COURT:  All right.  Well, the Court is going to

18   have to take a recess because we lost the connection,

19   Mr. Brown.

20          MR. BROWN:  Yes, Your Honor.  We'll stand by for

21   recontact by your courtroom deputy.

22          COURTROOM DEPUTY:  Or if y'all just want to stay on

23   the phone, we'll just have the jail call into the

24   videoconference -- telephone conference.

25          MR. BROWN:  Yes, ma'am.

1          COURTROOM DEPUTY:  Okay.

2          COURT SECURITY OFFICER:  All rise.

3          THE COURT:  Court will be in recess.

4      (Recess from 10:13 a.m. to 10:42 a.m.)

5          COURT SECURITY OFFICER:  Please be seated.

6          THE COURT:  All right.  We're back on the record in

7   the case of *United States versus Mark Manuel Angeles Marino*,

8   Case No. 3:20-cr-94.

9          And we're now conducting the proceeding by telephone

10  because the video is not reasonably available, given that we

11  tried to do it and the video cut off.  And, also, the courtroom

12  that we normally use for the videoconferencing, the cameras in

13  that courtroom are not operating.

14         So Mr. Bell is here in person.

15         Mr. Marino, are you on the telephone?

16         THE DEFENDANT:  Yes, sir, I'm here.

17         THE COURT:  And can you hear me okay?

18         THE DEFENDANT:  Yes, I can hear you.

19         THE COURT:  And, Mr. Brown, are you on the phone as

20  well?

21         MR. BROWN:  Yes, Your Honor.

22         THE COURT:  And can you hear me okay?

23         MR. BROWN:  Yes, Your Honor.

24         THE COURT:  Okay.  Mr. Marino, if at any time you're

25  unable to hear, please let me know immediately, or else I have

1 | to assume that you can hear everyone okay.

2 | Is that all right?

3 | THE DEFENDANT:  Okay, sir.

4 | THE COURT:  I'm sorry?

5 | THE DEFENDANT:  Okay, sir.

6 | THE COURT:  Okay.  All right.  I'm going to have the

7 | clerk swear you in.

8 | Madam Clerk.

9 | COURTROOM DEPUTY:  Please raise your right hand.

10 | Do you solemnly swear or affirm the answers you will

11 | give during these proceedings will be the truth, the whole

12 | truth, and nothing but the truth?

13 | THE DEFENDANT:  Yes, I will.

14 | COURTROOM DEPUTY:  And please state your name for the

15 | record.

16 | THE DEFENDANT:  Mark Manuel Angeles Marino.

17 | THE COURT:  All right.  Mr. Marino, also, if you need

18 | to speak privately with your attorney at any time during the

19 | course of these proceedings, that could be arranged.  You just

20 | need to let me know.

21 | Do you understand that?

22 | THE DEFENDANT:  Okay, sir.

23 | THE COURT:  I need to ask you some background

24 | questions again.  What was your date of birth?

25 | THE DEFENDANT:  December 24, 1994.

1          THE COURT:  And how far did you go in school?

2          THE DEFENDANT:  Again, sir?

3          THE COURT:  How far did you go in terms of your

4     education?

5          THE DEFENDANT:  Some college.

6          THE COURT:  And where was that?

7          THE DEFENDANT:  It's in the Philippines, Far Eastern

8     University.

9          THE COURT:  Okay.  And are you a United States

10    citizen?

11         THE DEFENDANT:  Can you repeat that again, please?

12         THE COURT:  Are you a citizen of the United States?

13         THE DEFENDANT:  Yes, sir.

14         THE COURT:  Can you read, write, and understand

15    English?

16         THE DEFENDANT:  Not that much, sir.

17         THE COURT:  Okay.  What is your primary language?

18         THE DEFENDANT:  Filipino, sir.

19         THE COURT:  And did you grow up in the Philippines?

20         THE DEFENDANT:  Yes, sir.

21         THE COURT:  And how old were you when you came to

22    this country?

23         THE DEFENDANT:  When I -- how old I am when what,

24    sir?

25         THE COURT:  When you came to the United States.

1    THE DEFENDANT:  21, sir.

2    THE COURT:  21?

3    THE DEFENDANT:  Yes, sir.

4    THE COURT:  Are you able to understand the

5    proceedings here?  Or do you need an interpreter?

6    THE DEFENDANT:  I would like to understand, sir.

7    THE COURT:  All right.  If you don't understand,

8    please let me know right away.  Okay?

9    THE DEFENDANT:  Okay, sir.

10    THE COURT:  Mr. Bell, I don't know if there was any

11    discussion with Judge Klindt at initial appearance about

12    whether an interpreter was needed.

13    MR. BELL:  Well, the initial appearance was with

14    Judge Richardson.  The -- we had a preliminary hearing.  At

15    that point at least it was my judgment that we could at least

16    get through the arraignment process, though, admittedly, his

17    English is not as fluent as -- as maybe a native tongue.

18    However, my judgment -- that we could get through

19    today and that he understood sufficiently to understand his

20    rights relative to arraignment, entering a plea of not guilty.

21    I will say this, there -- maybe he misunderstood the

22    Court's question.  He is in the United States legally.  My

23    understanding, at least from the pretrial services report, is

24    that he is not a United States citizen but a resident alien.

25    So he is legally here.

```
 1              Now, I don't know if that was a phone issue.
 2    Obviously most of my communication with him has been
 3    face-to-face.  We've been able to communicate -- I was at least
 4    of the judgment that he could get through today's proceeding.
 5              But, you know, obviously, we've had a little bit of
 6    miscommunication so far.  So I'll -- I would suggest maybe we
 7    just kind of ask him again and see where we go with it.
 8              THE COURT:  All right.  But you've been able to
 9    communicate with him in English?
10              MR. BELL:  So far I felt comfortable, Judge.
11              THE COURT:  Okay.  All right.  Mr. Marino, let me ask
12    you again.  Do you understand what it means to be a citizen of
13    the United States?
14              THE DEFENDANT:  To have a green card, sir?
15              THE COURT:  Do you have a green card?
16              THE DEFENDANT:  Yes, sir.
17              THE COURT:  Okay.  But that's actually a little
18    different.  So that means you're a lawful permanent resident.
19              THE DEFENDANT:  Okay, sir.
20              THE COURT:  But -- but that's different than being a
21    citizen.  Are you aware of that?
22              THE DEFENDANT:  No, I am not, sir.
23              THE COURT:  Okay.  All right.  Well, it just could be
24    a misunderstanding, or his not understanding about citizenship.
25    So you're saying he has a green card, which --
```

1    MR. BELL:  Yeah.  That's my understanding from
2  pretrial services and from, I guess, my investigation of the
3  case.  So --
4    THE COURT:  All right.  But I think we're
5  communicating adequately.
6    MR. BELL:  Yes, sir.
7    THE COURT:  Mr. Brown, did you want to add anything
8  at this point?
9    MR. BROWN:  No, Your Honor.
10    THE COURT:  All right.  And what is your current home
11  address?
12    THE DEFENDANT:  It's 6936 Longleaf Branch Drive,
13  Jacksonville, Florida.
14    THE COURT:  And how long have you lived there?
15    THE DEFENDANT:  Two years, I think.  Two years.
16    THE COURT:  Are you currently under the influence of
17  any drugs, alcohol, or intoxicants?
18    THE DEFENDANT:  No, sir.  I don't take -- I don't
19  take drugs.
20    THE COURT:  Okay.  Are you currently taking any
21  medications?
22    THE DEFENDANT:  No, sir.
23    THE COURT:  Are you currently under the care of a
24  doctor or a psychiatrist?
25    THE DEFENDANT:  No, sir.

1          THE COURT:  Are you currently receiving any type of
2    mental health care?
3          THE DEFENDANT:  No, sir.
4          THE COURT:  Have you ever been treated for any mental
5    illness?
6          THE DEFENDANT:  No, sir.
7          THE COURT:  To your knowledge, do you now suffer from
8    any mental illness?
9          THE DEFENDANT:  Again, please.  Again, please, sir.
10          THE COURT:  To your knowledge, do you now suffer from
11    any type of mental disease or illness?
12          THE DEFENDANT:  No, sir.
13          THE COURT:  And do you clearly understand where you
14    are, what you're doing, and the importance of this proceeding?
15          THE DEFENDANT:  Yes, sir.
16          THE COURT:  First of all, we're doing this
17    proceeding, obviously, by telephone, as opposed to live,
18    because of the coronavirus epidemic.
19          But you do have the right to have this proceeding
20    conducted live with you present here in the courtroom.  But you
21    can consent and allow the proceeding today, the arraignment, to
22    be done by telephone.
23          So have you spoken with Mr. Bell about having this
24    proceeding conducted by telephone?
25          THE DEFENDANT:  Yes, sir.

1          THE COURT:  And do you consent to allowing this

2   proceeding to be conducted by telephone rather than live?

3          THE DEFENDANT:  Yes, sir.

4          THE COURT:  And, Mr. Bell, if you could confirm that

5   you've spoken to your client about this and that he

6   does consent.

7          MR. BELL:  I have, Your Honor.  I've had at least --

8   well, three opportunities now, considering the specific one we

9   just had about the telephone itself.

10          THE COURT:  And he does consent?

11          MR. BELL:  That's my understanding of it, yes, sir.

12          THE COURT:  Okay.  Thank you.

13          And do you -- do you make this consent freely and

14   voluntarily?

15          Mr. Marino?

16          THE DEFENDANT:  Yes, sir.

17          THE COURT:  Do you make this consent freely and

18   voluntarily?

19          THE DEFENDANT:  Yes, sir.

20          THE COURT:  Okay.  Now, you should be aware that you

21   have the following rights in this case.  You have a

22   constitutional right to remain silent.  You do not have to make

23   any statement.  You do not have to give a statement at any time

24   to any law enforcement agent.

25          If you do make a statement, anything you say can and

1   will be used against you in court, including at a subsequent

2   hearing or proceeding in this case.

3          If you've made a statement in the past, you need not

4   make any further statement in the future.

5          Do you understand your right to remain silent?

6          THE DEFENDANT:  Yes, sir.  I understand.

7          THE COURT:  You have the right to plead guilty to the

8   charges, and by doing so to admit the truth of the charges

9   against you.  If you do so, there will be no trial and on your

10  plea the Court will find you guilty and convict you.  The next

11  step would be a presentence report and sentencing by the

12  district judge.

13         You also have the right to plead not guilty and to

14  maintain that plea.  If you plead not guilty, you're entitled

15  to the following rights under the Constitution and laws of the

16  United States.

17         You have a right to a trial by a jury of 12 jurors,

18  all of whom would have to unanimously agree on your guilt

19  before you could be convicted of these crimes.

20         Throughout these proceedings and all others, you're

21  presumed to be innocent.  And the government would have to

22  overcome that presumption and prove you guilty beyond a

23  reasonable doubt.  You would not have to prove that you're

24  innocent.

25         At the trial the witnesses for the government have to

1  come into court and testify in your presence.  Your attorney

2  could cross-examine the witnesses, object to evidence offered

3  by the government, and offer evidence on your behalf.

4       You may present witnesses in your own defense at your

5  trial.  And if your witnesses will not come voluntarily, I can

6  issue orders to make them come to the trial.

7       At the trial you have the right to testify, if you

8  choose to do so.  You also have the right not to testify.  The

9  choice is entirely up to you.  No one can force you to testify.

10       You have the right under the federal Speedy Trial Act

11  to be brought to trial within a specified period of time.

12  Generally that means that your trial must start within 70 days

13  from when the -- from when the indictment was filed, which was

14  July 8th.  But there are exceptions, which your lawyer can

15  explain to you.

16       If you're convicted, you have the right to have a

17  court of appeals review the rulings of the trial court to

18  determine if your conviction or sentence should be reversed

19  because either or both were improperly obtained.

20       So do you understand the rights I've explained?

21       Mr. Marino?

22       THE DEFENDANT:  Okay, sir.  I understand.

23       THE COURT:  Do you have any questions about those

24  rights?

25       THE DEFENDANT:  No, sir.

1    THE COURT:  Also, since it sounds like you're not a

2    United States citizen, I should tell you that a defendant who

3    is not a United States citizen may request that an attorney for

4    the government or a federal law enforcement official notify a

5    consular office from your country of nationality that you've

6    been arrested.  But even without that request a treaty or other

7    international agreement may require that your consular office

8    be notified.

9         Do you understand that?

10        THE DEFENDANT:  Okay, sir.  I understand.

11        THE COURT:  And did you receive a copy of the

12   indictment that was filed against you in your case?

13        THE DEFENDANT:  Yes, sir, I receive it.

14        THE COURT:  Okay.  I'm going to ask the government to

15   advise you of the charges contained in the indictment, as well

16   as any -- as well as the maximum and any minimum penalties.

17        Do you waive a full reading of the indictment,

18   Mr. Bell?

19        MR. BELL:  We do, Your Honor.  For recordkeeping

20   purposes, I had the opportunity to read it substantially

21   verbatim to Mr. Marino as well the other day.

22        THE COURT:  Okay.  Thank you.

23        All right.  Mr. Brown.

24        MR. BROWN:  Mr. Marino, the federal grand jury has

25   returned this indictment against you.  And it contains two

1    counts, or charges, for alleged crimes that you committed.   The

2    first count, Count One, charges you with receiving child

3    pornography in violation of federal law.

4           If you are to be convicted of the count which -- that

5    count, of receiving child pornography, you would face the

6    following minimum and maximum penalties:  a minimum penalty of

7    not less than five years, and potentially up to 20 years in

8    prison; $250,000 in fines, or both the fine and the term of

9    imprisonment.

10          There is a period -- excuse me.

11          There is a special assessment of $100, which is like

12   a court cost.  And then there's a second special assessment of

13   $5,000 if you are determined to be non-indigent; that is, if

14   you are able to hire your own lawyer.

15          Additionally, there's a period of supervised release

16   that the Court would impose.  And that period of supervised

17   release would involve you having to report and comply with

18   terms and conditions of that supervised release.  And that

19   period is not -- would be not less than five years, and

20   potentially up to life; that is, lifetime supervised release.

21          Sir, if you were to violate the terms and conditions

22   of your supervised release after being convicted in this case,

23   and if you were to commit one of the listed felonies which are

24   set forth in Section 3583(k) of Title 18 -- and those are

25   federal criminal sexual offenses, and also kidnapping, then the

1   Court would have no choice but to revoke your supervision and

2   to sentence you to a term of super- -- excuse me, a term of

3   imprisonment, an additional term of imprisonment, of not less

4   than five years, and potentially up to life in prison.

5          However, if you were to violate the terms and

6   conditions of your supervised release in some other manner,

7   then you could be sent back to prison for up to two years.

8          Additionally, there's a third special assessment

9   because this a child exploitation case.  And that -- that third

10  special assessment would be not more than $35,000 for

11  Count One.  Additionally, there is potential restitution with

12  regard to Count One as well.

13         Count Two charges you with possession of child

14  pornography.  And the maximum penalties if you were to be found

15  guilty of that particular charge are as follows:  a term of

16  imprisonment of not more than 20 years; $250,000 in fines, or

17  both the fine and the term of imprisonment; the same two

18  special assessments of $100 and $5,000 that I just advised you

19  of for Count One; and the exact same period of supervised

20  release that I advised you of as well.

21         Additionally, if you were to be found guilty and were

22  to be required to register as a sex offender and to commit one

23  of those listed crimes that I mentioned before, that is,

24  federal criminal sexual offenses or kidnapping, then the

25  district court would have no choice but to revoke that

1   supervision and to sentence you to a term of imprisonment of

2   not less than five years, and up to life.

3          If you were to violate those terms and conditions in

4   some other manner, then you could be sent back to prison after

5   revocation for a period of up to two years.

6          There's a -- there's also a third special assessment

7   with regard to Count Two of the indictment.  That special

8   assessment is not more than $17,000.

9          So, additionally, there is an asset forfeiture

10  provision which provides that because of the crimes that you're

11  alleged to have committed in the indictment, that the United

12  States may seek certain property that would -- that may have

13  constituted gross profits or proceeds that you got as a result

14  of committing those crimes, or -- and/or any property that you

15  may have used to commit those crimes, such as a computer or a

16  cellular telephone.

17         And if that property can't be found because of

18  something that you did or something that you didn't -- that you

19  failed to do, then the United States may seek substitute assets

20  up to the value of that property.

21         Additionally, there is a potential with regard to

22  both of these counts, as I advised you, of restitution by

23  victims if victims make such claim.

24         The worst-case scenario, Mr. Marino, is that if you

25  were to be convicted on both Count One and Count Two, and the

1   district court were to sentence you consecutively on those

2   counts to the maximum penalties allowed, you'd face the

3   following:  a minimum term of imprisonment of not less than

4   five years, and potentially all the way up to 40 years'

5   imprisonment; $500,000 in fines, or both the fine and the term

6   of imprisonment.

7           There are those special assessments that I mentioned

8   before.  The general special assessments total $200.  And the

9   special assessment with regard to this particular case

10  involving the Crime Victims' Act is -- is $10,000.

11          Again, if you were to violate the terms and

12  conditions of your supervised release, you would face a term

13  of -- excuse me.

14          If you were -- if -- the Court could sentence you to

15  a term of supervised release of not less than five years, and

16  potentially up to life.

17          If you were to violate the terms and conditions by

18  committing one of those listed crimes that we mentioned before,

19  you could be revoked -- your supervision could be revoked and

20  you could be sent back to prison for not less than ten years,

21  and up to potentially life.

22          Additionally, or alternatively, if you were to

23  violate your terms and conditions in some other manner, you

24  could be sent back to prison for up to four years.

25          There are also those special assessments that are

1  special with regard to child pornography cases.  And they total

2  in this case a total special assessment of not more than

3  $52,000.

4         Additionally, there's the asset forfeiture provision

5  which I talked to you about earlier.  And there's the potential

6  for restitution if certain identified child victims make claims

7  in this case.

8         THE COURT:  Okay.  Thank you.

9         So, first of all, Mr. Marino, do you understand the

10 charges against you?

11        THE DEFENDANT:  Yes, sir, I understand.

12        THE COURT:  And do you understand the penalties you

13 face for each count of the charges?

14        THE DEFENDANT:  Yes, sir, I understand.

15        THE COURT:  And do you understand the total penalties

16 you face for both of the counts in the indictment?

17        THE DEFENDANT:  Yes, sir, I understand.

18        THE COURT:  All right.  And, Mr. Bell, is there any

19 reason why the defendant should not enter a plea today?

20        MR. BELL:  No, Your Honor, none today.  And with the

21 Court's permission, I'd enter a plea of not guilty as to both

22 counts.

23        THE COURT:  All right.  The Court will enter not

24 guilty pleas on Mr. Marino's behalf to both of the charges

25 contained in the indictment.

1          And is the defendant willing to accept general

2     discovery?

3          MR. BELL:  He is, Your Honor.  I've executed a form

4     and provided it to the clerk --

5          THE COURT:  All right.

6          MR. BELL:  -- and -- your trial clerk here.

7          THE COURT:  And the case is set in front of

8     Judge Corrigan; set it for the September trial term, which runs

9     from September 8th through the 18th -- I note that speedy trial

10    runs on September 16 -- and with a status conference of August

11    24th, at 4 o'clock.

12         And when will the government be prepared to provide

13    discovery?

14         MR. BROWN:  Your Honor, I believe that Ms. Karase

15    will be in a position to provide discovery by July 21st.

16    That's Tuesday.

17         THE COURT:  All right.  So I'll set the deadline for

18    any discovery or suppression motions for August 7th.

19         And is the government willing to do a reciprocal

20    exchange of witness lists and Jencks Act material?

21         MR. BROWN:  Yes, Your Honor, three calendar days

22    before trial.

23         THE COURT:  And do you agree to reciprocate,

24    Mr. Bell?

25         MR. BELL:  Yes, Your Honor.

1        THE COURT:  All right.  Is there anything further to

2  take up, Mr. Brown?

3        MR. BROWN:  I don't think so, Your Honor.

4        THE COURT:  Mr. Bell?

5        MR. BELL:  No, Your Honor.  I believe that covers it.

6        THE COURT:  Okay.  Thank you.

7        All right.  Court will be in recess.

8        MR. BELL:  Thank you, Your Honor.

9        COURT SECURITY OFFICER:  All rise.

10   (The digitally recorded proceedings concluded at

11  11:07 a.m.)

12                              - - -

13

14

15

16

17

18

19

20

21

22

23

24

25

**CERTIFICATE**

UNITED STATES DISTRICT COURT     )
                                 )
MIDDLE DISTRICT OF FLORIDA       )


        I hereby certify that the foregoing transcript is a
true and correct computer-aided transcription from the official
electronic sound recording of the proceedings in the
above-entitled matter.


        DATED this 16th day of December, 2022.



                    s/Shannon M. Bishop

                    Shannon M. Bishop, RDR, CRR, CRC