```
              IN THE UNITED STATES DISTRICT COURT
                 MIDDLE DISTRICT OF FLORIDA
                   JACKSONVILLE DIVISION

UNITED STATES OF AMERICA,      Jacksonville, Florida

           Plaintiff,          Case No. 3:20-cr-94-TJC-LLL

  vs.                          November 4, 2020

MARK MANUEL ANGELES MARINO,    2:09 p.m.

           Defendant.          Courtroom No. 5D
_____


              DIGITALLY RECORDED MOTION HEARING
           BEFORE THE HONORABLE JAMES R. KLINDT
              UNITED STATES MAGISTRATE JUDGE


 GOVERNMENT COUNSEL:

        KELLY KARASE, ESQ.
        U.S. Attorney's Office
        300 North Hogan Street, Suite 700
        Jacksonville, Florida  32202


 DEFENSE COUNSEL:

        THOMAS M. BELL, ESQ.
        Thomas M. Bell, PA
        301 West Bay Street, Suite 1460
        Jacksonville, Florida  32202


 COURT REPORTER:

        Shannon M. Bishop, RDR, CRR, CRC
        221 North Hogan Street, #150
        Jacksonville, Florida  32202
        Telephone:  (904)549-1307
        dsmabishop@yahoo.com


     (Proceedings recorded by mechanical stenography;
 transcript produced by computer.)
```

1            P R O C E E D I N G S

2   November 4, 2020                              2:09 p.m.

3                        - - -

4            COURTROOM DEPUTY:  This Honorable Court is now in

5   session, the Honorable James R. Klindt presiding.

6            Please be seated.

7            THE COURT:  This is the case of the *United States of*

8   *America against Mark Manuel Angeles Marino*, Case

9   No. 3:20-cr-94-J32-JRK.

10           Kelly Karase represents the United States.

11           Tom Bell represents Mr. Marino.

12           Mr. Marino is present in the courtroom.

13           We are set for two matters.  We are set for a hearing

14  on the defendant's motion for bill of particulars, document

15  number 30, filed on October 5th, 2020.

16           The government filed its response in opposition to

17  the motion for bill of particulars, document 32, on October

18  19th, 2020.

19           I also thought, since we're going to be together to

20  discuss the motion, that we should also at least talk about the

21  motion to suppress physical evidence and statements, request

22  for evidentiary hearing, and memorandum of law, document 31,

23  filed on October 9th, 2020.

24           The government hasn't responded to that.  And that's

25  because it's my practice to allow the government to choose to

1    respond at the hearing.  It's set in -- on a suppression

2    motion.  But there are a couple of things I thought that we

3    could discuss about that and come up with a game plan for

4    eventually resolving the motion to suppress.

5            I really don't anticipate hearing any argument on --

6    on that motion, although I've read the motion.  But I thought

7    that this would be a good time for us to come up with a game

8    plan for that.

9            In any event, we are set for a hearing on the motion

10   for bill of particulars.  I have some initial thoughts about

11   it, but I don't think they're worth sharing at this point,

12   because I'd like to hear your arguments on it.  And -- and then

13   I'll probably, as I tend to do, interrupt you more than I

14   should, asking some questions about things that I have

15   questions about and that I'm interested in.

16           So, Mr. Bell, why don't you go first.  And take your

17   time.  I'm not in any hurry this afternoon.

18           MR. BELL:  Thank you, Your Honor.  Always a pleasure.

19   Nice to see you.

20           THE COURT:  Good to see you.

21           MR. BELL:  Judge, of course, I'd adopt the -- the

22   motion and the -- I guess the memorandum that may probably

23   constitute a template to some degree, and the -- not that there

24   isn't some use for templates in the motion for statement of

25   particulars and memorandum of law, document 30.

1          The essence of it is to Count One.  And, Judge, I --

2     we have a statute that essentially permits the government to

3     prove the commercial sex act, that the person essentially

4     enticed, harbored, provided, obtained, advertised, maintained,

5     patronized, or solicited a minor female that hadn't attained

6     the age of 14 while knowing -- in reckless disregard of the

7     fact that the minor female had not attained the age of 14 years

8     and would cause -- would be cause to engage in a commercial sex

9     act, which essentially tracks the statute.

10          But essentially there were one, two, three, four,

11    five, six, seven, eight, nine, you know, kind of conceptual

12    ways that that can be proven, and that there has to be a

13    commercial sex act.

14          Now, of course, the complaint kind of lays out

15    essentially a theory that in general might kind of provide a

16    basis to do that.

17          Ms. Karase's response makes it pretty clear that she

18    thinks that I should be able to kind of discern all this stuff

19    from the discovery, either what's been provided or what's

20    available at the -- at the -- at the Homeland Security office,

21    which would typically, in these cases -- where you'd have the

22    opportunity to review the stuff that wouldn't be -- the

23    discovery material that wouldn't be subject to the public

24    disclosure.

25          I guess what has occurred since this -- the initial

1    complaint, and was triggered in some instance by the

2    superseding indictment, is there is some evidence that -- that

3    essentially -- once the Homeland Security agents did the

4    forensics and reviewed the electronic devices that had been

5    seized pursuant to the search warrant, then at least the

6    government believes that there was some contact with an

7    underage female in Jacksonville, and that -- some photographs

8    that arguably would constitute -- might arguably constitute

9    child pornography had been sent locally.

10          So I was essentially left with the dilemma -- quite

11   honestly, was operating under the understanding that the

12   production counts were -- which were Two through Four, might

13   be -- and I didn't specifically raise those in the motion to --

14   the statement of particulars, might be -- be the new children,

15   the children -- the local children.

16          But essentially that's -- that's what we're left

17   with.  And, you know, after 20-some-odd years of practicing in

18   federal court, I'm generally kind of familiar with the law,

19   statement of particulars, and the government can kind of track

20   the statute and allege, you know, kind of the generic -- what I

21   would characterize the generic tracking of the statute is

22   usually sufficient.

23          But my contention is it is not in this case, because,

24   as to Count One, the commercial sex act -- I was really left

25   with the -- I guess I'm still not completely convinced.  Are we

1   talking about the initial documents that -- the initial

2   complaint about the -- what I'll characterize as the

3   ""PhilippineGirls"" amounts to the commercial sex act?

4            There is evidence that there was -- you know, at

5   least the government will tell us that there was -- there's

6   evidence that he was essentially enticing or soliciting or

7   patronizing a 14-year-old girl through the Philippines --

8   through the website that initiated this investigation.

9            I'm not aware of any evidence that there was any kind

10  of financial transaction with the local girl that essentially

11  sent nude photographs to Mr. Marino, according the government's

12  theory, that they found.

13           But I guess the essence of my complaint is it's not

14  my obligation to kind of -- under the Sixth Amendment I'm

15  entitled to some notice as to who, what, where, when this all

16  happened.

17           And I understand there's a set of dates in here.  But

18  I -- I think it's -- I contend that the government is obliged

19  to tell me, before we get to trial and I have to go over and

20  kind of sort it all out, what the acts are.  What's the basic

21  kind of proposition here?  What's the commercial sex act?  Is

22  it the ""PhilippineGirls"" or is it the local transaction?

23  That's my contention.

24           THE COURT:  As to Count One?

25           MR. BELL:  As to Count One, yes, sir.  Let me drop

1      down to Counts --

2            THE COURT:  Let me talk to you -- let me ask you a

3      couple of questions about Count One, because -- I mean, I read

4      and understood your motion.  But when I read Ms. Karase's

5      response, at least to me it became quite clear what the

6      government's contention was, what the government was --

7      intended to prove, and answered the questions that you had

8      as -- as she had laid out basically what the discovery reflects

9      as to Count One.

10           And -- and so -- and, of course, Ms. Karase can speak

11     for herself in a few minutes.  And I'm not trying to take her

12     position, because I -- I appreciated what you were saying.

13           But when I -- once I read the motion -- is there

14     going to be evidence from what was seized from the -- the

15     electronic devices that the government intends to -- to use in

16     part to prove Count One?  I'm thinking so.

17           But in terms of who it is and what the alleged

18     attempted sex acts are and what the time period of it was, I

19     came away quite clearly, from reading what she said, reading

20     the complaint, which she references, about what it seems to me

21     what it is the government's going to prove.  But we can let her

22     address that.  But you see what I'm saying, though?

23           MR. BELL:  Yeah.  And I do.  I don't completely

24     disagree.  But I guess my -- the short response, and I don't

25     mean to be snippy about this, is to say -- to some extent

1    that's in the indictment.  Her response is in a pleading that

2    in terms of -- if we got into the trial and there was some

3    misunderstanding of that, and essentially, you know, what set

4    of documents -- what set of evidence are you going to rely on

5    to prove that, that -- and what did you use in front of the

6    grand jury, for Sixth Amendment purposes it doesn't adequately

7    say that.  And that's kind of the bottom line as to Count One,

8    Your Honor.

9           THE COURT:  Well, I -- I would think, too, as to

10   Count One, tied together with the representations about what

11   404(b) evidence might be, that -- at least I came away with the

12   clear impression that -- that you refer to them as local --

13   local -- I don't know what you said, local girls, local alleged

14   victims, however you referred to them, that that -- if -- if

15   the government intends to use that type of evidence, the

16   government's going to comply with -- with the notice

17   requirement under 404(b), and -- and I'm assuming give you

18   whatever discovery there might be related to that.

19          So I'm not -- I'm not -- I hear your argument, but

20   I'm not so sure that -- and all Ms. Karase is doing is

21   summarizing the discovery when she lays out what it is the

22   discovery shows with respect to the case.

23          So, okay, but I want to hear your argument on the

24   other two counts.  And what counts are those?

25          MR. BELL:  And it is -- it is Five and Six.  It was a

1   typographical --

2            THE COURT:  Five and Six.

3            MR. BELL:  -- a scrivener's error.  It's Five and

4   Six, which were the original two counts, the receipt count and

5   Count Six.

6            THE COURT:  Okay.  All right.

7            MR. BELL:  And I guess the essence of that, Judge,

8   is -- maybe I spent too much time with Mr. Brown over the years

9   on these -- on these child pornography cases, for lack of a

10  better way of putting it.

11           But my recollection is -- over the years is typically

12  there would be at least one file name designated in the

13  indictment, that that is the file we're going to rely on to

14  prove that there was a receipt of child pornography, and this

15  is the one that we intend to introduce it to the jury as -- as

16  depicting child pornography.  And the government and the jury

17  would have to decide that.

18           Of course, typically we would argue that we should be

19  able to stipulate that that's -- that that's the image.  And

20  that applies to both counts -- in Six, where there's one or

21  more that's got to be -- Count Six alleges a prepubescent girl

22  of less than 12.

23           And, you know, I appreciate the government would

24  generally, you know, kind of summarize this evidence for me,

25  provide me and my expert the opportunity to come over and look

1   at it.

2           But I guess, again, from a basic notice Sixth

3   Amendment purpose of the specific acts that constitute the --

4   the factual basis for the child, it's my contention they have

5   to identify what specific files and images that they intend to

6   introduce that constitutes receipt of child pornography, a

7   sexually explicit image under the term.

8           There may be -- typically speaking, there's way more

9   than one.  When we go over there usually the government opts

10  to, you know, pick some portion of a video, some portion of

11  a -- of a -- of an image that they're going to display to the

12  jury and submit as the basis for the child pornography

13  production.

14          And the danger here is essentially if, for whatever

15  reason, the jury were to decide it wasn't -- didn't come --

16  whatever that image was didn't constitute child pornography, or

17  potentially I picked the wrong image, and I was operating under

18  a set of assumptions that essentially they were going to use

19  this video as the -- essentially the evidence, the case in

20  chief, of -- of the -- to display to the jury, but there was

21  some other video or some other set of images that they were

22  going to rely on, we have a -- essentially a multiplicity

23  argument, and essentially a double jeopardy argument, that if

24  the jury found for whatever reason it wasn't -- didn't

25  constitute child pornography, and the government said, "All

1  right.  Well, we'll go back and we'll use some other image" --

2          THE COURT:  Let me ask you this.  As to Count -- as

3  to Count Five -- right?

4          MR. BELL:  Yes, sir.

5          THE COURT:  There's a specific date, right?

6          MR. BELL:  Yes, sir.

7          THE COURT:  And so it seems like it -- that the image

8  would have been -- or the -- whatever it was, the visual

9  depiction would have been received on the 25th of October,

10 different from possession of child pornography, where you have

11 one date --

12         MR. BELL:  Right.

13         THE COURT:  -- and everything gets on the computer,

14 You're possessing it that day.

15         MR. BELL:  Yes.

16         THE COURT:  Right?

17         MR. BELL:  I understand the question.

18         THE COURT:  So have you gone through the discovery to

19 the degree that you know how many images were received on

20 October 25th?

21         MR. BELL:  I can't say that I have, Judge.

22         THE COURT:  So if there was only one received on that

23 day, or on or about that day, then the discovery has your

24 answer.

25         MR. BELL:  Theoretically, yes.

1    THE COURT:  Well, I mean, it's theoretical now

2  because you haven't looked.

3    MR. BELL:  Well, I'm generally aware from the

4  complaint and kind of the discovery that I have.  I haven't

5  gone over and examined, you know, the entire -- I guess the

6  internal Homeland Security.  That's correct, Judge.

7    THE COURT:  Then --

8    MR. BELL:  Usually I do that when the expert --

9    THE COURT:  But that's why I'm looking -- just when I

10  studied this, you know, it -- it seemed to me that what

11  argument you might have for Count Five could be different than

12  Count Six, because -- because in Count Six you have a date

13  also, but -- but if that's the date, which I think it is, the

14  date the search warrant was executed, then whatever images were

15  on there, the government's alleging he -- he possessed all of

16  them at the same time.  There could be 10,000.

17    MR. BELL:  Right.  And that's my fear.

18    THE COURT:  And that -- and then that's -- and that's

19  different than you going to -- and viewing the discovery and

20  saying, "Okay.  How many images are there on the 25th?  So what

21  is the government alleging was received on the 25th?"

22    And I'm thinking -- I'm thinking -- and Ms. Karase

23  can tell us this.  But I'm thinking the discovery is going to

24  give you that answer on -- as to Count Five.

25    MR. BELL:  Well, theoretically, yes.  But on the

1    other hand, there may have been more than one image sent.

2    Sometimes these things come in -- of course, as the Court is

3    well aware, the -- the date stated in the indictment, the

4    government is not necessarily bound to prove that.

5           As I understand, there was a series of exchanges over

6    that course of late October, that there may have been more than

7    one set of images.  And I'm just kind of going loosely from --

8    from my recollection of the discovery.  There was some

9    back-and-forth.

10          And -- if the government was locked in to it had to

11   be October 25th -- I think that's the date in the -- on Count

12   Five, or October 29th, that's the only date -- but, generally

13   speaking, of course, as the Court is aware, the government is

14   not bound to prove that the act occurred on that specific day.

15          THE COURT:  Well, I know.  But that's why -- that's

16   why if you came in here and said, "Look, there are 15 different

17   images that -- that are alleged to have been received on or

18   about October 25th" --

19          MR. BELL:  Yes, sir.

20          THE COURT:  All right.  Well, I mean, I -- I would

21   appreciate that -- not that I don't appreciate your argument,

22   but I would -- I would -- that would be on a -- on a continuum,

23   that would be somewhat more compelling than -- than what

24   appears to be here one date alleged on or about, and not

25   knowing whether there are multiple images in or around that

1   date.

2           MR. BELL:  Yes, sir.  And I understand.  And maybe

3   we'll have to revisit this.  But I guess to the extent that --

4   we had a motion deadline and I wanted to at least trigger this

5   issue.

6           THE COURT:  Right.

7           MR. BELL:  And I'll also say this.  And, generally

8   speaking, I guess my back-and-forth with Mr. Brown over the

9   years, in having tried a couple of these cases -- and it was --

10  and in this specific case it was a distribution case, but

11  essentially where these multiple files come in.

12          I guess what's always been kind of an interesting

13  issue floating around is what exactly is the unit of

14  prosecution in these cases.

15          THE COURT:  What's the what?

16          MR. BELL:  What's characterized as the unit of

17  prosecution in these child pornography cases.  Is each image a

18  unit of prosecution?  And theoretically they said, in the

19  commercial sex act case, the Count One, "Well, you know, one

20  that's not really what we were doing," or, "All right.  We'll

21  just go back into the file and pick another one after -- you

22  know, if a jury were to adversely reflect that."

23          And, hence, the two cases that I referred to in the

24  motion itself, which kind of makes clear -- one I think is a

25  Tenth Circuit case that -- where they didn't have to really

1    resolve what the unit of prosecution -- but that is a sub --

2    apparently the Eleventh Circuit and many others haven't

3    definitively resolved.

4              That's my concern from a double jeopardy position.

5    That is my argument to the statement of particulars, Your

6    Honor.

7              Any other questions?

8              THE COURT:  No.  I just -- you know, when it -- when

9    it comes to multiplicity and duplicity and all of those kind --

10   those two things in particular -- and I always confuse them

11   anyway, and have for 30 years, but -- but when it comes to

12   that, I mean, that's an issue that usually is taken up with a

13   motion to dismiss, right, a motion to dismiss because -- let's

14   just say I've got this right -- because I may be wrong.

15             But let's just say that you look at Count One that

16   charges between these dates, March 19th, 2019, and January 7,

17   2020 -- right?  That that -- that -- that there could be 25

18   different alleged events that would qualify as harboring,

19   enticement, et cetera.

20             So instead of really -- instead of this count really

21   charging one count, it's charging 25 counts.

22             MR. BELL:  Right.

23             THE COURT:  Right?  And so the -- the quandary that I

24   think defense counsel finds itself in, would it rather defend

25   this one count, although multiplicitous, or would it rather

1  have this broken down into 25 counts and have your client face,

2  you know, about 500 years' imprisonment?

3         So it becomes -- it becomes a -- it becomes a -- a

4  dilemma in that regard, too.  So I understand that.

5         MR. BELL:  Well, that's absolutely correct, and hence

6  the one in the distribution cases that was a little bit more

7  common.

8         And you're right, the dilemma was -- whether it's a

9  motion to dismiss or statement of particulars, I opted -- just

10  because my experience has been -- and maybe -- Ms. Karase may

11  correct me, that maybe Mr. Brown hasn't -- my recollection of

12  my history with him is typically there's at least one file

13  identified in the CP cases.

14         And the genesis of all this kind of really started

15  with the original indictment in Counts Five and Six.  And I

16  didn't -- and while I was kind of drafting it, the superseding

17  indictment -- and I didn't feel a whole lot better about the

18  commercial sex act.

19         And the Court, I think, has hit it on the head.  It

20  is a -- what is a unit?  I certainly don't want 25, and might

21  be prepared -- but I want to know exactly what we're talking

22  about, and particularly here, where there's a parallel

23  investigation that may be 404(b), may get incorporated into a

24  new superseding indictment.

25         I -- I wanted to be able to make sure at least we're

 1    all on the same page as to exactly what the basis of the -- the

 2    unit of prosecution is.

 3              THE COURT:  Okay.

 4              MR. BELL:  And that's it, Judge.

 5              THE COURT:  I understand.  All right.  Thank you.

 6              Ms. Karase?

 7              MS. KARASE:  Your Honor, may I argue from here?

 8              THE COURT:  Yeah.  Whatever is good for you.  That's

 9    fine.

10              MS. KARASE:  With respect to Count One, Your Honor,

11    the United States provided screenshots of all of the e-mail

12    correspondence that's referenced between the e-mail address

13    that Mr. Marino acknowledged he used, the "fhinami@secmail.pro"

14    to communicate with the "PhilippineGirls@secmail.pro."  And it

15    exactly -- almost exactly -- I think there was one day off --

16    corresponded to the dates charged in Count One.

17              Mr. Bell is right, we did produce some evidence

18    related to actual communications that Mr. -- well, they're all

19    actual communications, communications that Mr. Marino had with

20    a child who was local.

21              We produced a report of interview of the contact with

22    that child.  And we produced some communication Mr. Marino had

23    with that child.

24              But those all pertain to the time frame of July 2019,

25    and were somewhat limited.  And there was no discussion of any

1    payment or exchange of anything of value.

2         So based on the discovery provided, I thought it was

3    quite clear what was the nature of Count One of the indictment,

4    the commercial sex trafficking act.

5         THE COURT:  And you're essentially confirming now

6    that it's -- it's the Philippine situation and not the local

7    situation, if we can divide it up like that?

8         MS. KARASE:  That's correct, Your Honor.  In fact,

9    there were multiple instances during the several-month period

10   where Mr. Marino communicated with the ""PhilippineGirls""

11   e-mail account where he offered money in exchange for the

12   receipt of child pornography, and in exchange for the

13   performance of actual sex acts by the child in the Philippines,

14   and to the child in the Philippines, and did pay and send

15   Bitcoin payments to the person in the Philippines in order for

16   those sex acts to be performed and filmed and then sent back to

17   him.

18        With respect to Count Two, there's not --

19        THE COURT:  Count Five?  Are we going to --

20        MS. KARASE:  Sorry.

21        THE COURT:  Yeah.  Count Five.

22        MS. KARASE:  Thank you, Your Honor.

23        THE COURT:  The second count, Count Five.

24        MS. KARASE:  That's correct.

25        THE COURT:  Count Five, yes.

1          MS. KARASE:   Count Five of the superseding

2     indictment, that is the receipt of the child sexual abuse

3     material.

4          And I'll state here in open court -- I advised

5     Mr. Bell shortly before the hearing began -- the file is

6     21.jpg.   That's the file name that is alleged to have been

7     received on or about October 25th.   So I think that certainly

8     renders any argument or the motion moot on that point.   It is a

9     collage file that was described in the complaint affidavit.

10          Now, Mr. Bell wouldn't know this because he hasn't

11     been out to view the evidence yet in person, but there actually

12     is another file that was received in Mr. Marino's e-mail

13     account from the "PhilippineGirls" e-mail address on October

14     25th.

15          And that is a 2-minute-34-second video titled

16     "philippine nature.mp4.   And that shows a little girl holding

17     up a sign with his e-mail account on it.

18          And I only bring that up because I did advise

19     Mr. Bell today that having dug in and continued the

20     investigation, it seems clear that we will seek a

21     superseding -- a second superseding indictment related to the

22     child.   And I'm jumping around a little bit.

23          But the child who's local, we executed a search

24     warrant on the Discord application for the content of

25     Mr. Marino's account and retrieved multiple messages between he

1    and the child that I believe forms the basis for a 2422 online

2    enticement charge.

3           And so given that we intend to return to the grand

4    jury to present that additional charge, we likely will sub out

5    the October 25th receipt count for a different count.

6           But as it stands now, and appropriate for Your

7    Honor's consideration relating to the pending motion for bill

8    of particulars, I assure the Court and Mr. Bell the file that

9    was charged was the file titled 21.jpg.

10          And I understand Mr. Bell's point about some years in

11   the past we have provided specific file names in the charging

12   document.  I'm not aware of any case law that would render

13   Count Five, as it is charged in this instance, legally

14   insufficient, or any requirement that the file title be

15   included.  In fact, since Mr. Bell brought up Mr. Brown, I'm

16   aware that he does not always include the file titles.

17          You know, sometimes they are a series of, you know,

18   1830, even characters and digits and letters that don't make

19   much sense.  And so it's not always something that is included.

20          Here it was a relatively short one, but it wasn't

21   specifically identified in the indictment.  So to clarify, I've

22   now provided it to Mr. Bell.

23          May I move on to Count Six, Your Honor?

24          THE COURT:  Yes.

25          MS. KARASE:  That, of course, is the possession.

1    Your Honor is correct.  The date charged -- June 17, 2020, is

2    the date that the search warrant was executed.

3            And I think it's important to note that a specific

4    item, the HP laptop computer, is referenced here.  And all of

5    the images and videos of child pornography that are on that HP

6    laptop computer are what Mr. Marino is charged with possessing

7    on June 17th.

8            THE COURT:  Can I -- and are they all alleged to be

9    child pornography?

10           MS. KARASE:  So not --

11           THE COURT:  All the images?  In other words, if

12   you -- how many -- do you know how many images were found on

13   there?  Or we can talk in hypotheticals if you want.  I

14   just . . .

15           MS. KARASE:  So at least 6,000 child sexual abuse

16   materials.  And the way it just, like, characterizes them,

17   that's Category 1 that's unquestionably -- the agent can view

18   that and determine it is child sexual abuse material, or as the

19   law -- as 2252A defines child pornography.

20           Then there were more than 30,000 of what HSI uses as

21   Category 2, which are age-difficult files or child erotica

22   files.

23           So, yes, a vast number -- typically when we present

24   these cases for trial, we select just a few of those to present

25   to the jury.  And, of course, we provide notice to the defense

1    in advance.  And we provide the opportunity for the presiding

2    judge to view those images or videos or those excerpts.

3         But it is always the United States' position that all

4    of those files are charged.  And should the jury wish to view

5    all of those files, they may, because it's simply the

6    possession.

7         THE COURT:  But let me ask you about that, because

8    this -- this one -- not that I wasn't interested in the other

9    ones, but I find this very interesting.  And I've looked at a

10   couple of different issues lately on bill of particulars

11   related to some other cases and matters.

12        And when you have a situation -- and I think -- I've

13   seen it in the context of pill mill cases, where the government

14   will present -- the government does a search warrant at an

15   alleged pill mill, you know, a physician's office or a pain

16   clinic, and sees this -- let's just say -- again, this is all

17   hypothetical, say 500 patient files.

18        And so they -- they have an expert examine 10 of

19   them, or 15 of them.  And the expert offers the opinion -- and,

20   again, I can't quote what the standard is, but that whatever

21   prescription was provided to the patient was not medically

22   necessary and did not meet whatever medical standards, blah,

23   blah, blah.

24        And then the government essentially seeks to move all

25   500 files into evidence.  They've given an example, and the

1    extrapolation -- I don't know if the expert provides it, or who

2    provides it, and then all 500 files come into evidence.

3         In pharmacy cases, right, where it's alleged that

4    there are -- there are false prescriptions that have been --

5    that have been issued, the -- the government may provide in

6    discovery 6,000 -- 6,000 prescriptions, and records of 6,000

7    prescriptions.

8         And the request, of course, is -- from the defense

9    is, "Identify which one of these are fraudulent," you know.

10   And -- and so that becomes an issue.  I think the Second

11   Circuit has weighed in on a few of those, where the Second

12   Circuit -- or at least district courts in the Second Circuit

13   have said, you know, if you don't identify specifically, you

14   know, the fraudulent prescriptions, and essentially the

15   prescriptions that you're going to allege to the jury are

16   fraudulent, you could put the defendant in -- in the position

17   of having -- of having to carry the burden of proving which

18   are -- which are fraudulent and which ones aren't, because the

19   government, again, is going to put in evidence of X number, but

20   then move the records of all of the prescriptions in,

21   extrapolating that they're all -- and suggesting to the jury

22   that they're all false.

23         So it puts the -- it puts the defense, at least

24   according to some -- some courts in the Second Circuit, in the

25   position of having to take on the burden of proving what's

1   false, what's not.

2          And I think one example that I read was if -- if the

3   defense -- if the defense is going to be, "This was a mistake,"

4   right, there were some mistakes made, and misinformation -- if

5   the -- if the defense doesn't know specifically which alleged

6   false prescriptions are going to be used or placed into

7   evidence or are going to be the centerpiece of the government's

8   case, then it's left with trying to prove every single one of

9   them was a mistake and not focusing on the ones that are going

10  to be used to prove the case.

11         So I guess that's what I'm getting at here, is -- and

12  I've -- and I've got to tell you, I've never tried a child

13  pornography case.  I don't think I've ever sat through an

14  entire case and studied it from A to Z, in terms of -- of what

15  the jury's told.

16         I was always under the assumption that if you -- I

17  know I'm longwinded about this, and I apologize.

18         But if the government alleges that someone like

19  Mr. Marino possessed child pornography on a certain date, that

20  you decide to rely on a certain -- one or two or three videos

21  or depictions, portions of those are published to the jury, the

22  jury makes the call, and the case is decided on those -- let's

23  just call it three depictions, and that the jury really -- I

24  was under the impression the jury really wasn't told that, by

25  the way, there are 9,000 more over here that, in Agent Luedke's

1   opinion, are child pornography and, "If you want to see those

2   and make the determination, we can load all those up for you,

3   too."

4           I didn't know -- I guess I'm asking a question,

5   really.  Is the jury -- is the jury told -- and does the

6   agent -- the seizing agent or the case agent or the -- the

7   agent who does the forensic examination, does that agent

8   testify about the number of images altogether?  And what

9   instruction does the jury receive in terms of that issue?

10          MS. KARASE:  Sure.  Well, the answer to your question

11  is yes, we typically do have the agent testify as to the number

12  of images that are similar or that amount to the child sexual

13  abuse material.

14          And sometimes if the collection is categorized, they

15  will give descriptions of the folders and what the collection

16  looks like, or even, you know, he had 700 images depicting

17  children engaged in bestiality; he had 400 images depicting

18  sadistic and masochistic conduct.

19          But I think it's important to provide the number of

20  images to the jury, because -- and, of course, it depends on

21  what the defense is.

22          But it goes to whether this -- it goes to the

23  defendant's intent.  And it goes to his motive for engaging in

24  the activity.

25          If he has this sexual interest in children and has

1    this large collection, like he does here, then I think that

2    that is important for the jury to consider, particularly if the

3    defense is that this was some kind of a virus and an accidental

4    possession, or that -- you know, certainly if specific images

5    are challenged that this really isn't child pornography, then,

6    because the United States typically moves all of the files into

7    evidence, then in a rebuttal case, "Well, we can look at the

8    other files and publish some of the other files."

9         And it's up to the jury to determine whether they

10   agree.  Of course, in order to convict on possession of child

11   pornography, it only takes one image for -- or file for the

12   jury to conclude that someone unlawfully knowingly possessed

13   child pornography.

14        But with respect to -- to the number, I understand

15   your point about extrapolation.  The jury is certainly welcome

16   and can conclude -- make that determination.  It doesn't

17   require an expert opinion.

18        They're advised and instructed as to what constitutes

19   the child sexual abuse material.  And they can determine for

20   themselves if they wish to go through and view each of the

21   other images if they have a concern about the images that are

22   actually published for them in court.

23        THE COURT:  So when the agent testifies that the

24   images other than the ones that are published are similar to or

25   have file names that are the same as, the agent's just

1  testifying to those -- testifying to that as a factual matter

2  and not offering an opinion that the -- that the -- the images

3  not published are child pornography?

4          MS. KARASE:  Right.  They're usually describing

5  what -- what is seen as kind of a general overview, that these

6  are the types of files that -- that were also located.

7          THE COURT:  All right.  And let me ask you this.  And

8  I don't know -- I don't know how much of this is even relevant

9  to the discussion.  But let's just say -- let's do an easy

10  number, because of my challenge with math.

11          But let's just say that there are ten -- what the

12  government believes to be images of child pornography found on

13  a computer, and the government decides to publish one of those,

14  but you have 10.

15          And so you charge it all in one count.  I -- I

16  have -- I've never looked at it.  But what does the law say

17  about that?  Could you charge ten different counts?

18          MS. KARASE:  I believe that the unit of prosecution

19  has to do with the -- the matter which is possessed, so that

20  the laptop computer would be the unit of prosecution.

21          THE COURT:  I see.  Okay.  All right.

22          MS. KARASE:  I think that's kind of the container

23  where everything is held.

24          THE COURT:  I see.  Okay.  And so then in this case,

25  where you say there are -- I think you said about 6,000, what

1    you believe to be images or depictions that would meet the

2    definition of -- the statutory definition of child pornography.

3    And then did you say another 30,000?

4            MS. KARASE:  That would fall under this category,

5    too, that could be child erotica or age difficult.

6            THE COURT:  And with respect to where that line is

7    drawn, the 6,000 and the 30,000, does Mr. Bell -- does

8    discovery show him where that line is drawn?

9            MS. KARASE:  It does.  So when he would come to

10   Homeland Security's offices, they're actually color coded.  So

11   the Category 1s are all red and the Category 2s are all yellow.

12   And so it's very clear how the agent has categorized these.

13           And we very rarely -- I'm not going to say that we

14   would never do it, but we very rarely present any of the

15   Category 2 files for a jury, because usually the Category 1 are

16   so plentiful and -- and are enough to show intent.

17           THE COURT:  And you would -- in this case would you

18   anticipate showing any Category 2s?

19           MS. KARASE:  No, Your Honor.

20           THE COURT:  All right.  And then -- then this may be,

21   at least for a second, my last question.  At what point do you

22   decide how many images that you are going to ask the Court to

23   admit into evidence at the trial and actually choose those?

24           Because you're -- you said you would provide Mr. Bell

25   with notice when -- and he'll know before trial which ones you

1    intend to introduce.

2            When -- when will he know that, basically?

3            MS. KARASE:  Well, just to clarify, do you mean

4    introduce -- admit or publish in the courtroom?

5            THE COURT:  Well, I guess both.  I mean, you -- I

6    thought you said you intend to introduce all 6,000.

7            MS. KARASE:  That's right.

8            THE COURT:  That's right?

9            MS. KARASE:  That's correct, yes.

10           THE COURT:  Okay.  That's correct.  Okay.

11           And so I -- so the question is which ones you would

12   intend to seek to publish.

13           MS. KARASE:  So we usually decide that in the week or

14   two leading up to trial, that these are going to be the -- the

15   handful that we seek to publish and this is going to be the

16   specific clip.

17           I've had occasions where I have provided -- we always

18   provide them in advance to the district judge.  There's

19   actually case law that requires the district judge to view

20   those before publishing to the jury to conduct a 403 analysis.

21           And there have been occasions where the presiding

22   judge will further limit the portion of the clip that we

23   intended to publish.  So that's the purpose for doing it --

24   doing it earlier.

25           And, you know, at the time that -- usually before

1    we're presenting it for the judge's consideration, we're

2    conferring with defense counsel to -- to show those files.

3            THE COURT:  Well, because defense counsel at least

4    has to have enough time to file a motion in limine if defense

5    counsel wishes to, for some reason, ask the Court to -- to not

6    allow those to be published and/or admitted into evidence,

7    right?

8            MS. KARASE:  Sure.  And I'm not saying that I would

9    be opposed to it, but I have not seen, at least in this

10   district, certainly not in this division -- and I'm not aware

11   of -- in other divisions within the district of specific time

12   frames being set to require when that takes place.

13           I mean, certainly we have an obligation to provide

14   exhibits to -- to defense or to show exhibits before we

15   introduce those.  But, as I said, the practice has been to -- a

16   week or two before trial.  That's when we're really compiling

17   our exhibits and preparing what will be published to the jury.

18           THE COURT:  All right.  Did I interrupt your

19   argument?  Or were you finished?

20           MS. KARASE:  I think I'm through, Your Honor.

21           THE COURT:  All right.  Thank you.

22           Mr. Bell?

23           MR. BELL:  Well, I think -- I mean, this really kind

24   of comes to the essence of it.  And the Court -- and the Court

25   I think, you know, correctly identifies the unit of prosecution

1    argument.

2         I don't know that I've ever heard a prosecutor

3    explicitly say that it's the container or the unit in this

4    district.  I think that's one of the issues that's kind of up

5    for -- in dispute.

6         I'm not disagreeing with her, because I would

7    probably rather do it as -- as the -- as -- the container as

8    the unit of prosecution than each 6,000 counts.

9         Now -- and I'm trying to --

10        THE COURT:  I think so.

11        MR. BELL:  I'm trying to recall, as Ms. Karase

12   described how the trials work, whether there may have been

13   some -- many of the cases would be distribution cases, where

14   you would get an entire -- you know, there would be a

15   file-sharing system, where a number of images would come in in

16   one kind of stream, for lack of a better way of putting it.

17   I'm forgetting the term.

18        And she's certainly correct that we oftentimes argue

19   about whether it's inextricably intertwined and whether it was

20   a 404(b), and whether it was unfairly prejudicial.

21        But I don't know that I've ever heard it actually

22   affirmatively concluded what the unit of prosecution is.  I'm

23   not sure I really want the answer.  I know in state court they

24   tend to define it as each image, which I don't necessarily

25   agree with.  But that's one way of doing it.

1      And I guess my concern is -- the Court talked about

2  some of the other statement of particulars, is what did the

3  grand jury hear?  And typically I -- my recollection from the

4  trials that I've done on this, the agent will come in, he'll

5  describe the particular files that would constitute the images

6  the government -- they won't actually bring an image to the

7  grand jury, but they'll discuss the specific file.

8      This image is -- this is what's on this video.  This

9  is what constitutes child pornography.  There may have been

10 more there.  And I think she's correct, and I would tend to

11 agree with her, that there will usually be more images

12 introduced in a distribution count for sure than the ones that

13 would be displayed to the jury.  I don't know that we get to

14 the number 6,000.

15     Now, that's always relevant for sentencing purposes,

16 as well as for guidelines, but -- you know, obviously to the

17 extent that a jury hears that there's 6,000 more of these that

18 the agent feels is child pornography, I'm not -- I just can't

19 recall a specific evidence -- instance where that came out in,

20 say, a possession case and, say, a receipt case.  It's more

21 typical of a stream of files that would be downloaded in a

22 distribution case, maybe a production case.

23     But in a production case, we should be able to limit

24 it to one or two files.  And, you know, in general I don't know

25 that we're completely speaking past one another.

1           I don't -- you know, obviously we have the issues of

2    inextricably intertwined and 404(b).  To the extent that each

3    one of those images constitutes Category A child pornography

4    versus child erotica, you know, that becomes a fairly

5    significant 403(b).

6           And I think that's one of the reasons I filed the

7    motion for statement of particulars, is because we at least --

8    at least in the other cases that I have a specific recollection

9    of, there was one or two targeted files that I knew this is

10   what I was going to have to go argue with Judge Corrigan or

11   Judge Howard or Judge Davis, about whether they were going to

12   introduce that, how much got published, how much -- what

13   portion of that got published, and then deal with the other

14   issues accordingly.

15          THE COURT:  Well, but from what Ms. Karase has said,

16   that as far as she knows in these cases, in the ones she's

17   handled, this one is not really being handled much differently,

18   other than there are cases, because -- I see the indictment,

19   where there are cases -- not all cases, as Ms. Karase points

20   out.

21          But I see cases where the specific images or the

22   specific videos, or whatever the government is alleging -- I'm

23   thinking, among others, they are listed.  So you --

24          MR. BELL:  Yeah.

25          THE COURT:  So you know from day one, not five days

1  before trial or ten days.  I would think -- I would think,

2  especially given the -- the effort, I think, by the Court and

3  the -- and the -- let's put it this way.

4          If you had to go to trial in 45 days or 60 days, like

5  you used to have to with Judge Moore, you know, I'm thinking

6  ten days would be pretty good, because that's like -- you know,

7  that's 25 percent of the time -- that's 25 percent of the time

8  before you go to trial.

9          But now if cases don't get to trial for six months,

10  eight months, a year, then it would seem to me that -- that

11  just -- just because the Court is so accommodating, the

12  government's very understanding of defense having to prepare,

13  that I -- I would just think, you know, five or ten days you'd

14  probably -- maybe you could give them a little more time to do

15  that.

16          But I also know that, you know, you usually don't

17  really start getting ready for trial until you really know

18  there's a trial.  And that -- and so you have these different

19  factors.  And so I don't disagree with you.  But if she's

20  telling you right now, she's telling you here are the -- here

21  are the two categories.

22          MR. BELL:  Right.

23          THE COURT:  The government is not going to use

24  Category 2, the 30,000, so you can put those out of your mind.

25  They're not going to offer those.

1    And so now you have the 6,000.  And if you think you
2  have an argument, whether it's -- whether it's -- the proper
3  predicate is laid for it, whether it's relevant, whether you
4  think that it's really 404(b) and not part of the charged
5  crime, whether you think under 403 the prejudicial effect
6  substantially outweighs the probative value, or whatever that
7  is -- whatever the exact wording is -- I mean, you've got --
8  you've got all that information that you can -- you can muster,
9  in terms of whether it's a motion in limine or objections at
10 trial.  You've got all that.  I mean, she's -- she's laid it
11 all out for you.
12    You know, I -- the thing that's missing is -- it
13 would be nice -- right?  It would be nice, when you go over to
14 look at this discovery, if Agent Luedke said, "By the way,
15 these are the four videos we're going to try to play at trial,
16 you know, that we're going to seek to admit."  Okay?
17    MR. BELL:  Yeah.
18    THE COURT:  Because you know -- you know --
19 Ms. Karase has told you they're going to seek to admit the
20 whole unit of prosecution into evidence --
21    MR. BELL:  Right.
22    THE COURT:  -- but they're only going to publish a
23 certain number.  It would be nice if you knew which ones they
24 were going to publish now.
25    MR. BELL:  Well, yes, Judge.  And I'm saying not only

1  nice, but -- because in my experience there are some files

2  identified.  And there should be.  I mean, at least to --

3  for -- because, also, keeping in mind what was presented to the

4  grand jury and whether they're constructively amending the

5  indictment.  Because I don't know that they --

6         THE COURT:  Yeah.  I don't know about that, because

7  if they're constructively amending the indictment -- I'm not --

8  it would be like if you charged -- I'm just trying -- now, I'm

9  thinking off the top of my head here.  So this may not make any

10 sense at all.

11        But, you know, everything goes back to dope cases to

12 me, because they're -- because they're fairly straightforward,

13 yet they cover every issue that you have.  Right?

14        So if -- if you seized a kilo off of a -- of someone

15 in a traffic stop and -- and the -- and the -- and the grand

16 jury returned an indictment against the person, charging the

17 person with possession with intent to distribute 500 grams or

18 more of a substance containing a detectable amount of cocaine,

19 right, and -- and the government had evidence over here of two

20 other kilos that were being possessed with intent to distribute

21 back at the house and didn't present that to the grand jury,

22 that's not a constructive -- in my mind, talking off the top of

23 my head here, that's not a constructive amendment of the

24 indictment.  It's just additional evidence that the person was

25 possessing cocaine with intent to distribute.

1      So when you start getting into an amendment of the

2 indictment, I -- I'm not so sure that -- you'd have to brief

3 that one for me.

4      MR. BELL:  Well --

5      THE COURT:  And I don't think it would be today.

6      MR. BELL:  And, I'm sorry, Judge, because I digressed

7 to a moment in the Brown trial, which we probably shouldn't

8 talk about, when there was -- it all comes down to a dope case.

9 But that's -- that's not -- that's not really something we

10 should be talking about.

11      THE COURT:  I just -- when I say it comes down to a

12 dope -- I just meant that the drug cases seem to present every

13 type of issue you can have.  And --

14      MR. BELL:  Well, yes, because -- it did work.  But I

15 stand by my argument to that extent, Judge, because I --

16 because I don't completely agree with Ms. Karase's we get to

17 introduce all 6,000.

18      But that -- the point of why I think we have to have

19 file names is to get some notice under the Sixth Amendment.  I

20 will stand -- pat on that foot for --

21      THE COURT:  All right.

22      MR. BELL:  Thank you, Your Honor.

23      THE COURT:  Ms. Karase?

24      MS. KARASE:  Your Honor, if I may just add, of

25 course, one of the documents that has been at Mr. Bell's

1    fingertips since the start of this charge was the criminal

2    complaint, and in that there is a file that is described that

3    was found on the HP laptop, the same HP laptop that is at issue

4    in Count Six of the indictment.  And that's a video file, 27

5    seconds long.  It's described in detail.

6           So certainly that -- that is at least one of the

7    files that is possessed by Mr. Marino's -- alleged to be

8    possessed by Mr. Marino on the date of Count Six.

9           THE COURT:  All right.  Thank you.

10           Well, I'll -- I'm not going to enter an order,

11    necessarily -- I'm not going to rule right now.  But it seems

12    to me that -- that based on the discovery that was provided --

13    and I think the representations that Ms. Karase is making here

14    are representations that -- that she -- I'm not going to say

15    she's stuck with them.  I mean, she's just making them as a

16    matter of fact.  And I don't see her changing her mind on these

17    things.

18           But it seems to me that you've gotten some answers --

19    the answers you really wanted as to Count One.  And as to Count

20    Two, she's told you, at least at this point, unless there's a

21    superseding indictment, a specific image that she's talking

22    about.

23           MR. BELL:  Yes, sir.

24           THE COURT:  The 21.jpg.

25           MR. BELL:  Count Five.

1      THE COURT:  Count Five.  What did I say, Two?  I

2  meant Five.  All right?

3      And so then that -- to me, that takes us more to the

4  Count Six situation, which I think -- I think that there's been

5  additional information that -- that you've learned today and

6  that really previews when you get the -- I know it's hard to

7  set up these -- these opportunities now to -- you know, to look

8  at the evidence.  And I know there are a lot of challenges

9  given the COVID situation.  But you at least have some good

10  background for that.

11      And it really comes -- comes down -- just from my

12  point of view -- I know -- Mr. Bell, I'm sure it won't be the

13  first or last time that you'll disagree with me, but -- but

14  that -- that really other than knowing the specific images that

15  the government intends to publish at this point, that -- that

16  you -- that you have -- through discovery, through the criminal

17  complaint, and through the representation of Ms. Karase, you

18  have the information that you need.

19      And I -- I'm -- I would just -- I just think -- and,

20  again, I don't -- I don't want to -- I don't want to try to --

21  I don't want to try to change something that -- you know,

22  that's been going on a certain way.  It's not up to me to do

23  those kind of things.

24      But I would think that some requirement of a

25  reasonable period of time to be provided with the -- the images

1    were -- that were depictions that the government intends to

2    publish at trial is -- is something that -- that would be

3    reasonable, getting a reasonable amount of time would be

4    reasonable.  But I'm not so sure that that's up to me.

5           It seems to me that's probably more something that

6    the district judge would decide how far in advance you -- you

7    should have those things.  But, of course, the district judge

8    might think it's a discovery issue and that it would be left up

9    to me.

10          So I'm not sure.  I'll work my own -- I'll work

11   through that myself, but -- but I really -- I do appreciate the

12   arguments today.

13          These things are -- are interesting.  And when you,

14   you know -- and, again, without going into detail about these

15   things, because I find so much of it interesting -- but there

16   has been a -- there was an argument before the Eleventh Circuit

17   not too long ago where a defense attorney was complaining

18   about, you know, not knowing what the theory of the prosecution

19   was and what the prosecution was doing, and that when -- when

20   it came time for the -- when the jury returned a verdict,

21   there -- you couldn't tell if the jury returned a verdict on

22   Theory A or Theory B.

23          And right out of the bat, the Eleventh Circuit judge

24   who was on the panel was all over this defense attorney for not

25   filing a motion for bill of particulars, you know.  So -- yeah,

1   so I -- I certainly appreciate, you know, your filing it.  And

2   I'll study your arguments and study this a little more.

3           MR. BELL:  Thank you, Your Honor.

4           THE COURT:  Now, let's talk about the suppression

5   hearing for a minute.  I do want to set it for a hearing.  And

6   I think we need to have a hearing no matter how we proceed.

7           But I guess my -- my initial question is to

8   Ms. Karase.  And if I, you know, launch into a history lesson

9   here, I -- I hope you'll excuse me.

10          But, you know, there's a *Franks versus Delaware*

11  issue, or issues, raised by Mr. Bell.  And so I've seen in the

12  past and I've experienced in the past where some judges will

13  make an initial determination based on the paper filings on

14  whether the defendant has met the burden of having an

15  evidentiary hearing on the *Franks* issues.

16          I think I can say this with some confidence.  I

17  experienced many times -- not too many, because that would

18  suggest a problem with all the *Franks* issues, but I -- I

19  experienced a number of times with Judge Schlesinger when he

20  was a magistrate judge that he -- he would convene the hearing

21  and -- and he would have the hearing go forward with the

22  government presenting the certified copy of the -- of the

23  affidavit and search warrant in a search warrant case, whether

24  it was a *Franks* issue -- and if the government wanted to

25  proceed on direct examination, the government could.  But if

1　the government didn't, then he would allow defense counsel to

2　at least probe initially and see if it -- if it appeared to him

3　that there was any additional support other than the

4　allegations in the motion for the *Franks*, a full evidentiary

5　hearing on the *Franks* issue.

6　　　　　　Now -- and, Ms. Karase, you may or may not be aware

7　of this, but there have been at least -- I think two cases I've

8　had in the not so distant past where your colleagues, when

9　there have been *Franks* issues -- they've just proceeded.  They

10　called the case agent.  They've gone through all the evidence.

11　And -- and they haven't really raised the issue of whether

12　there had been a sufficient showing under *Franks*.

13　　　　　　So I guess I'm -- I'm curious about if -- if -- and I

14　think I'll give you this choice, but, of course, I'll hear from

15　Mr. Bell.  I can give you time to respond to this motion in

16　writing if you would like, and then you can decide -- you don't

17　have to decide today.

18　　　　　　You can decide whether you are going to take the

19　stance that Mr. Bell has not made a sufficient showing, and,

20　therefore, you do not think an evidentiary hearing should

21　proceed, or you may -- you may decide that -- given the

22　allegations, that you -- that you would want to call your case

23　agent.

24　　　　　　I do think the *Leon* aspect of it, the good-faith

25　exception aspect of it, in almost -- in almost all cases that

1    I've seen, you know, cries out a little bit for some testimony.

2    And here Mr. Bell is suggesting in the motion to suppress

3    that -- that the good-faith exception would not apply, and then

4    he sets out some reasons, and relies on a dissent opinion from

5    one of the circuits as the -- as the road map to his position

6    on that, I believe.

7            MR. BELL:  It's the Fourth, not the Ninth, Judge.

8            THE COURT:  Well, you cited the Ninth, too, for

9    opposition, but -- so -- but -- or -- or if you-all think it's

10   best, we can -- we can go ahead and just set the evidentiary

11   hearing and tee it up, and -- and we can -- we can see what

12   happens there.

13           I'm -- I'm really open to -- to proceeding either

14   way.  And it could be that you file a response.  And I still

15   think that we need to -- to at least call the agent for some

16   initial questioning.

17           Do you have a thought, Ms. Karase, on how you want to

18   do this?

19           MS. KARASE:  Well, Your Honor, my -- my initial

20   position was that Mr. Bell needed to make that showing and

21   that -- and that his paper was insufficient to make the

22   showing.  But I take your point about it may be necessary

23   anyway.

24           We're set on the December trial term.  Of course, you

25   know, motions would toll -- would toll that, but -- but I think

1   it makes sense to just go ahead and tee this up for a hearing

2   at this point, anticipating the need for testimony from the

3   agent anyway.

4          THE COURT:  All right.  Well, I think -- I really --

5   I think, just because of a couple of the issues and the way

6   they're raised, that probably will be most -- the most helpful

7   for me, being selfish about it, in terms of trying to figure

8   this out, so . . .

9          Now, you did mention possibly a superseding -- a

10  second superseding indictment.  Is that -- is that something

11  that's still in the works and you're still contemplating?  And

12  would it change anything that we have here, in terms of the

13  motion to suppress?

14         MS. KARASE:  It would not change anything with

15  respect to the motion to suppress.  I believe that I have

16  everything that I need in order to proceed on the second

17  superseding, but it's just a matter of when we can convene the

18  same grand jury.  I suppose we could re-present.

19         So I do anticipate that happening in the future, but

20  I know that the original grand jury is not scheduled to

21  appear -- we've had a little bit of a difficulty summoning

22  everyone together.

23         So, I mean, I think certainly within the next 30 days

24  I would be back before a grand jury, but I don't anticipate

25  anything that would be in any new charges that would be

1  presented to be impacted by a motion to suppress.  Everything

2  really stems from the execution of the search warrant.  And

3  that's what we're -- what we're discussing.

4          THE COURT:  All right.  So we can go ahead, then, and

5  try to set that in the next probably couple of weeks?

6          MS. KARASE:  Yes, Your Honor.

7          THE COURT:  Now, Mr. Bell, you rely on an expert.  I

8  believe Robert Conner.

9          MR. BELL:  Yeah.  It's Richard, Your Honor.

10          THE COURT:  Richard, Robert, Richard.  It started

11  with an R.

12          MR. BELL:  Yeah.

13          THE COURT:  Do you plan to call the expert?

14          MR. BELL:  Well, yeah, I think that would be

15  appropriate under the -- in light of Ms. Karase's position in

16  going forward with an evidentiary --

17          THE COURT:  All right.  And so is that -- do you need

18  to check with Mr. Conner, in terms of his availability?

19          MR. BELL:  I probably should, yes, Your Honor.

20          THE COURT:  All right.  Well, let's -- let's do this,

21  let's just talk generally about a period -- of course, we have

22  to make sure Agent Luedke is available.

23          So let's just -- let's talk generally about when we

24  might be able to do it.  Of course, we have a couple of

25  holidays in November.

1      MR. BELL:  Judge, we can assume that we'll move to

2  continue the trial.  That will give us a little bit more

3  flexibility on the scheduling.  I haven't really taken it up

4  with Judge Corrigan, but I don't know that -- given how far

5  everybody is backed up that I anticipate a big problem.

6      THE COURT:  I'm guessing if you filed a written

7  motion you would -- probably wouldn't have -- have a problem.

8      Why don't we work backwards.  Is Thanksgiving the

9  26th?  Is that right?

10      So Thanksgiving is the 26th.  That usually presents a

11  very difficult week for people.  So then we would be looking --

12  if we want to do it in November, we'd be looking at the week of

13  the 16th.  And I'm guessing just one of the days the week of

14  the 16th is probably a federal holiday.  Or is that next week?

15      MS. KARASE:  It's next week, Your Honor.  That's the

16  11th.

17      THE COURT:  Oh, it is.  It's the 11th?  Oh, yeah, it

18  is the 11th.  I should have known that.  It's always the 11th.

19  All right.  So that . . .

20      So the week of the 16th, I think -- one, two, three,

21  four -- I have something scheduled every day already except for

22  Friday, the 20th.  But what I have scheduled is something that

23  I could probably just take a break for each day.

24      And so I'm thinking -- it's set -- I'm really -- I'm

25  really thinking 16th, 17th, or 18th would all -- would all work

1    for me, if that would work for you-all.  The 18th I do have a

2    plea at 2:30.  So I'd have to break for that.  And then I'm

3    clear all day Friday, the 20th.

4            And, of course, that -- you know, I don't know if

5    that starts creating problems for anyone.  So why don't -- why

6    don't you do this.

7            Knowing that, Ms. Karase, you can -- you can get

8    together with Agent Luedke and see what works for him, look at

9    your schedule.  Mr. Bell can talk to Mr. Conner and see if that

10   week works.

11           If that week doesn't work, then I'm thinking, if

12   you-all get a continuance, we might be looking at the first

13   week in December.

14           MR. BELL:  Was that -- is that the 30th?  Or do you

15   want to do the 7th?

16           THE COURT:  What is --

17           MR. BELL:  We get into that -- and my only one

18   concern I have is I have a fairly big sentencing hearing with

19   Judge Davis on a case that's been passed many, many times, and

20   on -- on a fentanyl death case with Ms. Hackenberry.

21           THE COURT:  When is that?

22           MR. BELL:  That's the 19th.  So --

23           THE COURT:  Of what day?

24           MR. BELL:  Of --

25           THE COURT:  November?

1    MR. BELL:  Yeah, 19th of November.  Yes, sir.  So I

2  was thinking if we did it that week of the -- the 16th, I'd

3  probably prefer the 20th, if Mr. Conner is available, although

4  Mr. Kent has the co-defendant.  And that's one of the reasons

5  we've continued it as many times.

6    THE COURT:  I wouldn't -- I wouldn't go to the bank

7  on necessarily doing it on that day --

8    MR. BELL:  Right.

9    THE COURT:  -- if you've got co-counsel.

10    MR. BELL:  Well, he has the co-defendant -- I mean,

11  not a co- -- a related case.

12    So I'd probably prefer the 20th, if Mr. Conner and

13  everybody else was agreeable.  But either the 30th or the 7th,

14  assuming we can get a continuance, would seem to make more

15  sense to me.

16    THE COURT:  But why don't you-all try to come up with

17  what you think the best date or dates are.  Because I'm sure,

18  knowing Ms. Karase's caseload -- just from my perspective, she

19  probably has a number of other hearings, too, and things that

20  are scheduled.

21    So you-all can -- if you-all get together and come up

22  with the best date or so, we'll get right back to you on -- on

23  whether it works or not.  But the 20th.

24    And then I think, you know, I have -- I don't have

25  much scheduled in early December now.  I have a hearing here

```
 1    and there.  Like, on the 9th I've got something.  But if
 2    you-all get a continuance and want to try to do it in the first
 3    two weeks of December, then that -- that would work for me,
 4    too.
 5             MR. BELL:  I'll speak to Ms. Karase about it and Mr.
 6    Conner.
 7             THE COURT:  Do any of those times sound like they
 8    might work, Ms. Karase?
 9             MS. KARASE:  Yes, Your Honor.  Most of the -- the
10    days that Your Honor mentioned -- I do have a sentencing in the
11    morning of the 17th, but it's first thing, starting at 9:00,
12    and it shouldn't be too terribly long.
13             I believe the agent may have a conflict with the
14    20th.  But the first two weeks of December look pretty good.
15    There's a couple of days excepted.
16             THE COURT:  Okay.  Well, just -- and if we want to
17    shoot for that, because, you know, I think that -- especially
18    if there's going to be a superseding indictment anyway.
19             And, really -- I mean, it looks -- it looks to me
20    like -- in some -- I'm not telling you-all anything you don't
21    know.  In some of these cases the suppression issues are -- you
22    know, they're -- they -- they have an effect on the case.
23             But in this particular case, it seems like it would
24    be -- it would be greater than that, than just whether a little
25    bit of evidence comes in or not.
```

1      Judge Corrigan's status is on the 16th.  So when is

2  that?  That's not next -- I think I forgot to -- I'm handling

3  that, by the way.  I meant to tell you, Megan.

4          COURTROOM DEPUTY:  Okay.  The following week.

5          THE COURT:  Okay.  Can you put that on our calendar.

6          All right.  So we'll -- if you file -- if you come to

7  the status and ask for a continuance, you've got a good chance

8  of getting it.  Not that you wouldn't anyway.

9          All right.  Well, I appreciate your arguments today.

10  Thank you.

11          Ms. Karase --

12          MR. BELL:  Judge, then that might help -- we can work

13  on -- sorry to interrupt you.

14          THE COURT:  Yes.

15          MR. BELL:  But if I can't get anything filed in the

16  meantime and Ms. Karase and I can work out the details, we can

17  maybe tell you, you know, if we could -- on the 16th, as to

18  scheduling.  Hopefully we'll know before then anyway.

19          THE COURT:  Okay.  Well, just -- you can -- that's

20  fine.  Or just get with Ms. Chaddock and get it set up that

21  way.  That will be fine.

22          MR. BELL:  All right.

23          THE COURT:  All right.  And if you don't know until

24  the 16th, that's fine, too.

25          MR. BELL:  Well, we can even get the dates and then

1    just move for the continuance on the 16th, if we don't --
2              THE COURT:  Okay.  All right.
3              MR. BELL:  If I can't get anything filed by then.
4              THE COURT:  Okay.
5              MR. BELL:  Thanks, Judge.
6              THE COURT:  All right.  Ms. Karase, anything else?
7              MS. KARASE:  No, Your Honor.
8              THE COURT:  Mr. Bell?
9              MR. BELL:  No, Your Honor.  Thank you.
10             THE COURT:  Anything else?
11             MR. BELL:  No, sir.
12             THE COURT:  All right.  We're in recess.
13             COURT SECURITY OFFICER:  All rise.
14        (The digitally recorded proceedings concluded at
15   3:20 p.m.)
16                                    -  -  -
17
18
19
20
21
22
23
24
25

## **CERTIFICATE**

UNITED STATES DISTRICT COURT     )
                                 )
MIDDLE DISTRICT OF FLORIDA       )


        I hereby certify that the foregoing transcript is a
true and correct computer-aided transcription from the official
electronic sound recording of the proceedings in the
above-entitled matter.


        DATED this 16th day of December, 2022.



            s/Shannon M. Bishop

            Shannon M. Bishop, RDR, CRR, CRC