[DO NOT PUBLISH]

# In the
# United States Court of Appeals
## For the Eleventh Circuit

_____

No. 22-13883

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

MARK MANUEL ANGELES MARINO,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 3:20-cr-00094-TJC-LLL-1

_____

Before ROSENBAUM, GRANT, and ANDERSON, Circuit Judges.

PER CURIAM:

Mark Manuel Angeles Marino appeals his convictions and sentences for attempting to entice a child to engage in a commercial sex act, in violation of 18 U.S.C. §§ 1591(a)(1) and 1594(a), enticing a child to engage in sexually explicit conduct for the purpose of producing visual depictions, in violation of 18 U.S.C. § 2251(a) and (e), receiving child pornography, in violation of 18 U.S.C. § 2252(a)(2) and (b)(1), and possessing child pornography, in violation of 18 U.S.C. § 2252(a)(4)(B) and (b)(2).

He argues that the district court erred in denying his suppression motion because the affidavit used to obtain a search warrant for his residence lacked probable cause. First, he argues that the affidavit's reliance on his Bitcoin payment of $56 for "5pics" to an account linked to another account known to deal in child pornography was too tenuous to support a finding of probable cause that child pornography would be found in his residence. Second, he argues that certain challenged statements and omissions in the affidavit relating to the undercover investigation and the nature of child pornographers precluded a finding of cause. Third, he argues that the evidence of his Bitcoin payment was stale, given the approximate seven-month delay between when he made the payment and when law enforcement ultimately sought a search warrant. Alternatively, he argues that no good-faith exception could rehabilitate the defective search warrant. Separately, he argues

that the court erred at sentencing by holding his silence against him when he declined to allocute.  We address each argument in turn.

## I. SUPPRESSION MOTION

### A. The Affidavit's Reliance on the Bitcoin Payment

The district court's denial of a motion to suppress presents a mixed question of law and fact, and we review its findings of fact for clear error, "considering all the evidence in the light most favorable to the prevailing party," and its application of the law to those facts *de novo*. *United States v. Campbell*, 26 F.4th 860, 870 (11th Cir.) *(en banc)*, *cert. denied*, 143 S. Ct. 95 (2022).  Whether an affidavit establishes probable cause is reviewed *de novo*, and we give "due weight to inferences drawn from those facts [recited in the affidavit] by resident judges and local law enforcement officers." *United States v. Jiminez*, 224 F.3d 1243, 1248 (11th Cir. 2000) (quotation marks omitted).

"[N]o Warrants shall issue, but upon probable cause, supported by Oath or affirmation."  U.S. Const. amend. IV.  "Probable cause exists if, 'given all the circumstances set forth in the affidavit . . . , there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" *United States v. Trader*, 981 F.3d 961, 969 (11th Cir. 2020) (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)).  "To establish probable cause to search a home, a warrant affidavit must establish a connection between the defendant and the residence to be searched and a link between the residence and any criminal activity." *Id.* (quotation marks omitted). "[P]robable cause is a fluid concept—turning on the assessment of

probabilities in particular factual contexts—not readily, or even usefully, reduced to a clear set of legal rules." *Gates*, 462 U.S. at 232.

In determining probable cause, a court may consider only the information presented to the issuing judge. *United States v. Lockett*, 674 F.2d 843, 845 (11th Cir. 1982). "Opinions and conclusions of an experienced agent regarding a set of facts are properly a factor in the probable cause equation for issuing a warrant." *United States v. Robinson*, 62 F.3d 1325, 1331 n.9 (11th Cir. 1995) (quotation marks omitted, alteration adopted). A district court's determination of probable cause is given great deference, *Trader*, 981 F.3d at 966, and affidavits supporting a search warrant are presumptively valid, *United States v. Lebowitz*, 676 F.3d 1000, 1010 (11th Cir. 2012).

Here, the district court did not err in concluding that the search warrant was supported by probable cause and in denying Marino's suppression motion. First, on October 29, 2019, Marino (or someone at his address) sent $56.38 to an email address controlled by a person who had previously sent child pornography to HSI investigators.

Second, the affidavit also contained sufficient evidence to establish probable cause that Marino's Bitcoin payment on October 29, 2019, was sent in exchange for child pornography. The search warrant affidavit states (and Marino does not dispute) that the payment was for "5pics," and referenced an email address with the same domain as that of the email address HSI investigators were communicating with—"secmail.pro"—"an anonymous email

service that uses private servers to provide its user protection for anonymous use." Moreover, the search warrant affidavit states (and Marino does not dispute) that the four times that email account sent Officer Gergar images or videos, child sexual abuse material was sent and the Officer received such material before remitting any form of payment. "Given all the circumstances set forth in the affidavit," the district court correctly concluded that "there [was] a fair probability that" Marino had received child sexual abuse material from the user of the Email Account by transferring Bitcoin through an electronic device used to access the internet at his residence. *Trader*, 981 F.3d at 969.

Finally, the affidavit also contained sufficient evidence to conclude that "it was likely that child sexual abuse material (or evidence thereof) would be found at the [r]esidence, whether or not the material had been previously deleted." Doc. 64 at 45; *Trader*, 981 F.3d at 969. The affidavit described the characteristics of collectors of child pornography, their tendency to hoard it, as well as the tendency of other possessors of child pornography and their tendency to delete it and, how, despite deleting such material, there were computer forensic techniques for recovering files that had "long been deleted" from a computer. These statements were based on Agent Luedke's "experience, training, and conversations with other experienced agents who investigate cases involving the sexual exploitation of children." Although Marino may contest the veracity of these statements, "[o]pinion and conclusions of an experienced agent," such as Agent Luedke, "regarding a set of facts,"

are a proper factor to consider in the "probable cause equation." *Robinson*, 62 F.3d at 1331 n.9.

Although "probable cause is a fluid concept," when viewing the foregoing facts in the light most favorable to the government—the prevailing party—the district court in its "assessment of probabilities" correctly concluded that there was a fair probability that child pornography would be found at Marino's residence.

For the foregoing reasons, we affirm as to this issue.

## B. Marino's Challenge to Certain Statements and Omissions in the Affidavit

A search warrant is void if the affidavit supporting the warrant contains statements that are "knowingly and intentionally" false or made "with reckless disregard for the truth," and if, when such "false material [is] set to one side, the affidavit's remaining content is insufficient to establish probable cause." *United States v. Franks*, 438 U.S. 154, 155-56 (1978).

"The reasoning in *Franks* also applies to information omitted from warrant affidavits." *Madiwale v. Savaiko*, 117 F.3d 1321, 1326 (11th Cir. 1997). When a search-warrant affidavit "contains omissions made intentionally or with a reckless disregard for the accuracy of the affidavit," a warrant may be invalidated. *Id.* at 1326-27 (quotation marks omitted). If "facts omitted from the affidavit are clearly critical to a finding of probable cause," then "recklessness may be inferred from proof of the omission itself." *Id.* at 1327 (quotation marks omitted). However, "[o]missions that are not reckless, but are instead negligent, or insignificant and immaterial, will

not invalidate a warrant." *Id.* (citation omitted). "Indeed, even intentional or reckless omissions will invalidate a warrant only if inclusion of the omitted facts would have prevented a finding of probable cause." *Id.*

The principles boil down to "a two-part test to determine whether a misstatement in an officer's warrant affidavit amounts to a violation of the Fourth Amendment." *Paez v. Mulvey*, 915 F.3d 1276, 1287 (11th Cir. 2019). "First, we ask whether there was an intentional or reckless misstatement or omission." *Id.* Recklessness occurs when an officer "should have recognized the error, or at least harbored serious doubts" about the information. *See United States v. Kirk*, 781 F.2d 1498, 1503 (11th Cir. 1986). "Then, we examine the materiality of the information by inquiring whether probable cause would be negated if the offending statement was removed or the omitted information included." *Paez*, 915 F.3d at 1287. If probable cause would not be negated, the warrant is still valid. *Franks*, 438 U.S. at 171-72.

Here, the challenged statements and omissions, taken together, do not negate probable cause. As to the omissions—which include (1) the undercover agent also receiving non-pornographic images, (2) the government's test transfer amount in a nominal amount (which was sent to avoid receiving child pornography),[1]

---

[1] Marino implies that his $56 Bitcoin payment—similar in amount to the investigator's $55 Bitcoin payment to the same seller—was also intended to avoid receiving child pornography, as was the officer's. However, the officer's $55 payment was a small amount of the asking price for a video to be custom-made for the officer. By contrast, Marino's $56 payment was for "5 pics." We

and (3) the full content of the advertisement—even assuming this omitted information was included, considering these statements with the other evidence in the light most favorable to the prevailing party (the government) would not negate probable cause and were not intentionally omitted or otherwise recklessly omitted in disregard of the truth.

Likewise, the challenged statements—consisting of statements about (1) the characteristics of collectors of child pornography, (2) the tendencies of child pornographers to hoard their collections, and (3) the ability to recover deleted data from electronic devices—were not knowingly false nor made with a reckless disregard of the truth, because the agent based these statements on his training, experience, and discussion with others. Although Marino may disagree with these statements, that does not mean they were deliberately false or made with a reckless disregard for the truth.

Accordingly, we affirm as to this issue.

## C. Was Evidence of the Bitcoin Payment Stale?

"The staleness doctrine . . . requires that the information supporting the government's application for a warrant must show that probable cause exists at the time the warrant is issued." *United*

---

cannot conclude that the district court erred in rejecting Marino's argument in this regard. In light of the totality of the other evidence, including especially the fact that this same seller sent child pornography to the HSI officers before the payment of any money, the $56 for five pornographic pictures is not so clearly unreasonable as to undermine the fair probability that Marino was paying for child pornography.

*States v. Touset*, 890 F.3d 1227, 1237-38 (11th Cir. 2018) (quotation marks omitted, alteration in original). "[E]valuating staleness requires a fact-intensive inquiry based on the totality of the circumstances, including the nature of the suspected crime . . . , habits of the accused, [and] character of the [information] sought." *United States v. Goldstein*, 989 F.3d 1178, 1193 (11th Cir. 2021) (quotation marks omitted, second and third alterations in original). Because of the fact-intensive nature of the inquiry, "there is no particular rule or time limit for when information becomes stale. *Touset*, 890 F.3d at 1238 (quotation marks omitted, alteration adopted).

In *Touset*, we considered the staleness doctrine as it relates specifically to child pornography appeals, and held that evidence of a defendant's three separate low-money payments to an account known to deal in child pornography was not stale when those payments had occurred about a year and a half before law enforcement obtained a warrant to search the defendant's residence. 890 F.3d at 1237-38. In so holding, we adopted the reasoning of sister circuits that had "repeatedly rejected staleness challenges in appeals involving child pornography," on the ground that "pedophiles rarely, if ever, dispose of child pornography." *Id.* at 1238 (quotation marks omitted). This is especially true as it relates to "*electronic* child pornography," because probable cause "remains longer because deleted files can remain on electronic devices." *Id.* (quotation marks omitted, emphasis in original).

Under the prior panel precedent rule, "a prior panel's holding is binding on all subsequent panels unless and until it is

overruled or undermined to the point of abrogation by the Supreme Court or this [C]ourt sitting *en banc.*" *United States v. Dudley*, 5 F.4th 1249, 1265 (11th Cir. 2021), *cert. denied*, 142 S. Ct. 1476 (2022) (quotation marks omitted).

Here, Marino's challenge to the staleness of the evidence—*i.e.*, the use of his October 29, 2019, payment to obtain a warrant in June 2020, nearly eight months later—is foreclosed by our precedent. Accordingly, we affirm as to this issue.

D. *The Good Faith Exception*

We review *de novo* whether the good-faith exception to the exclusionary rule applies, but we review the underlying facts on which that determination is based for clear error. *United States v. McCall*, 84 F.4th 1317, 1322 (11th Cir. 2023), *cert. denied,* No. 23-6609, (Mar. 4, 2024). The government must prove whether the good-faith exception applies. *Campbell*, 26 F.4th at 870 n.5.

"[T]he exclusionary rule . . . generally prohibits the government from relying on evidence obtained in violation of the Fourth Amendment," and it applies "in only unusual cases," because the remedy "almost always requires courts to ignore reliable, trustworthy evidence." *McCall*, 84 F.4th at 1323 (quotation marks omitted). The rule is typically "limited to situations in which the threat of its application can deter future violations," and generally applies "only if the police exhibit deliberate, reckless, or grossly negligent disregard for Fourth Amendment rights." *Id.* (quotation marks omitted). "In doubtful or marginal cases, suppression is inappropriate." *Id.* (quotation marks omitted).

Because good-faith mistakes cannot be deterred—a goal of the exclusionary rule—an exception to the rule is the good-faith exception. *Id.* This exception prevents suppression of "reliable physical evidence seized by officers reasonably relying on a warrant issued by a detached and neutral magistrate." *United States v. Leon*, 468 U.S. 897, 913 (1984). The good-faith exception does not apply in four circumstances:

> (1) where the issuing judge was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth; (2) where the issuing magistrate wholly abandoned his judicial role; (3) where the affidavit supporting the warrant is so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; and (4) where a warrant is so facially deficient[—*i.e.*, in failing to particularize the place to be searched or the things to be seized—]that the executing officers cannot reasonably presume it to be valid.

*United States v. Goldstein*, 989 F.3d 1178, 1196 (11th Cir. 2021) (quotation marks omitted).

"When law enforcement officers act in good faith and in reasonable reliance upon a judge's order, exclusion is not warranted because there is no unlawful conduct to deter." *Id.* When considering an officer's reliance on a district court's probable cause determination, it is "necessary to consider the objective reasonableness, not only of the officers who eventually executed a warrant, but also

of the officers who originally obtained it or who provided information material to the probable-cause determination." *Leon*, 468 U.S. at 923 n.24. Our focus is "on [the] reasonably well-trained officer and is based upon the totality of the circumstances," which may naturally extend "beyond the four corners of the affidavit and search warrant" when determining whether an officers' reliance on the warrant was reasonable. *United States v. Martin*, 297 F.3d 1308, 1318 (11th Cir. 2002) (quotation marks omitted); *see United States v. Taxacher*, 902 F.2d 867, 872-73 (11th Cir. 1990) (holding that officer acted in objective good faith by (1) consulting a local district attorney before seeking a search warrant, (2) submitting the matter to a neutral magistrate, and (3) acting on reasonable suspicion when a suspect had consented to search his vehicle and then revoked it after the officer focused on an item in the vehicle).

Here, even assuming a Fourth Amendment violation occurred, we agree with the district court that suppression is not warranted because Agent Luedke reasonably and in good faith relied on a facially valid warrant issued by a detached and neutral magistrate judge after he consulted with an Assistant U.S. Attorney who agreed that the affidavit contained sufficient facts to establish probable cause. The record establishes that Agent Luedke acted in objective good faith, executing the warrant and providing information material to the probable-cause determination. Additionally, because none of the exceptions to the good-faith exception apply, suppression would not be warranted.

Accordingly, we affirm as to this issue.

## II. SENTENCING ISSUE

No person "shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. A defendant retains this privilege through his sentencing. *Mitchell v. United States*, 526 U.S. 314, 326 (1999).

In *Mitchell*, the Supreme Court held that a sentencing court may not draw an adverse inference from the defendant's silence, in determining the facts of the offense. *Id*. at 330. At sentencing, Mitchell declined to testify to the quantity of cocaine that she had distributed. *Id*. at 318-19. The district court ruled that she had no right to remain silent. *Id*. at 319. Based on her silence, the court attributed five kilograms of cocaine to her, applied the mandatory minimum term of imprisonment for distribution of that quantity, and in doing so stated that it "held it against [her] that she didn't come forward," and that she "should have come forward and ex-plained[ed] her side of th[e] issue." *Id*.

In holding that Mitchell had a right to remain silent at sentencing, the Supreme Court reasoned "the question in a criminal case is not whether the defendant committed the acts of which he is accused," but "whether the Government has carried its burden to prove its allegations while respecting the defendant's individual rights." *Id*. at 330. "By holding [Mitchell's] silence against her in determining the facts of the offense at the sentencing hearing, the District Court imposed an impermissible burden on the exercise of the constitutional right against compelled self-incrimination." *Id*. To be clear, *Mitchell*'s holding is narrow, "leav[ing] open the

possibility that some inferences might permissibly be drawn from a defendant's penalty-phase silence." *White v. Woodall*, 572 U.S. 415, 421 (2014); *see also Mitchell*, 526 U.S. at 330 ("Whether silence bears upon the determination of a lack of remorse, or upon acceptance of responsibility for purposes of . . . [U.S.S.G.] § 3E1.1 . . . is not before us, and we express no view on it.").

In *Barrington*, this Court held that the district court did not plainly err during sentencing when it asked Barrington whether he still maintained that he had done nothing wrong, and Barrington declined to answer. *United States v. Barrington*, 648 F.3d 1178, 1195 (11th Cir. 2011). Barrington did not object to the question at sentencing and argued for the first time on appeal that the question infringed on his Fifth Amendment right against self-incrimination. *Id.* Because Barrington cited *Mitchell*, this Court "constru[ed] his contention to be that the district court impermissibly drew an adverse inference from [his] refusal to answer the question and considered that inference in determining the appropriate sentence." *Id.* This Court dismissed his contention as "entirely speculative," reasoning that "[n]othing in the district court's comments evinced an intent to impose a more severe sentence based on [his] failure to respond to [its] question." *Id.* at 1197. Moreover, his assumption "that the district court relied on an adverse inference in view of the perceived harshness of his sentence," was belied by "his low end Guidelines sentence." *Id.*

We review *de novo* constitutional sentencing issues. *United States v. Joyner*, 882 F.3d 1369, 1377 (11th Cir. 2018).

Here, to the extent that Marino cites *Mitchell*, he appears to contend that the court drew an adverse inference against him. Accordingly, because Marino cites *Mitchell*, we follow *Barrington*'s lead and construe Marino's "contention to be that the district court impermissibly drew an adverse inference from his [declining to allocute] and considered that inference in determining the appropriate sentence." *See Barrington*, 648 F.3d at 1195.

We reject Marino's contention that the district court drew an adverse inference from Marino's silence. Even more so than in *Barrington*, it is untenable that the district court here drew an adverse inference on the basis of Marino's silence. Unlike in *Barrington*—where this Court determined that Barrington's contention that the district court drew an adverse inference from his silence was "entirely speculative"—here there is nothing to speculate about. *See Barrington*, 648 F.3d at 1197. After Marino's objection to the court's sentence, on the ground that his silence had been construed against him, the district court clarified that it "did not impose a higher sentence against [him] because he chose not to speak," removing any potential for speculation about whether it had construed his silence against him. *Cf. Barrington*, 648 F.3d at 1197.

Even if the district court had not expressly stated that it did not construe Marino's silence against him, "[n]othing in the district court's comments evinced an intent to impose a more severe sentence based on [Marino's declining to allocute]." *See Barrington*, 648 F.3d at 1197. The court repeated throughout sentencing that it was

Marino's right to remain silent and appeared less concerned with condemning Marino and more concerned about the need to ensure his sentence adequately deterred his future conduct and protected the public from him. The court's words here are far from the express condemnation of the district court's in *Mitchell*, which told Mitchell that, because she remained silent, it "held it against [her] that she didn't come forward." *Cf. Mitchell*, 526 U.S. at 319. Additionally, to the extent that Marino may be "assum[ing] that the district court relied on an adverse inference in view of the perceived harshness of his sentence," any assumption is belied by the record, because the district court sentenced him to 660 months' imprisonment—a downward variance from the recommended advisory Guidelines sentence of life imprisonment. *See Barrington*, 648 F.3d at 1197. In considering deterrence and whether Marino "would not in the future engage in this same type of conduct," the district court did consider "the absence of any information about Mr. Marino and why he conducted himself the way he did and what his current state of mind is." However, the district court expressly disavowed drawing any adverse inference from Marino's silence. Because the court did not construe Marino's silence against him, it did not err procedurally.

As noted above, the Supreme Court has expressly left open the issue of whether a sentencing court may properly draw an adverse inference from a defendant's silence in considering lack of remorse or acceptance of responsibility (i.e. sentencing considerations similar to the future dangerousness factor relevant here). Because the record in this case is clear that the district court did not

22-13883               Opinion of the Court                17

draw an adverse inference from Marino's silence, we need not, and do not, address that open issue in this case.

For the foregoing reasons, the judgment of the district court is

**AFFIRMED.**

**UNITED STATES COURT OF APPEALS**
**FOR THE ELEVENTH CIRCUIT**

ELBERT PARR TUTTLE COURT OF APPEALS BUILDING
56 Forsyth Street, N.W.
Atlanta, Georgia 30303

David J. Smith
Clerk of Court

For rules and forms visit
www.ca11.uscourts.gov

April 03, 2024

MEMORANDUM TO COUNSEL OR PARTIES

Appeal Number:  22-13883-DD
Case Style:  USA v. Mark Marino
District Court Docket No:  3:20-cr-00094-TJC-LLL-1

Opinion Issued
Enclosed is a copy of the Court's decision issued today in this case. Judgment has been entered
today pursuant to FRAP 36. The Court's mandate will issue at a later date pursuant to FRAP
41(b).

Petitions for Rehearing
The time for filing a petition for panel rehearing is governed by 11th Cir. R. 40-3, and the time
for filing a petition for rehearing en banc is governed by 11th Cir. R. 35-2. Except as otherwise
provided by FRAP 25(a) for inmate filings, a petition for rehearing is timely only if received in
the clerk's office within the time specified in the rules. **A petition for rehearing must include
a Certificate of Interested Persons and a copy of the opinion sought to be reheard.** See 11th
Cir. R. 35-5(k) and 40-1.

Costs
No costs are taxed.

Bill of Costs
If costs are taxed, please use the most recent version of the Bill of Costs form available on the
Court's website at www.ca11.uscourts.gov. For more information regarding costs, see FRAP 39
and 11th Cir. R. 39-1.

Attorney's Fees
The time to file and required documentation for an application for attorney's fees and any
objection to the application are governed by 11th Cir. R. 39-2 and 39-3.

Appointed Counsel
Counsel appointed under the Criminal Justice Act (CJA) must submit a voucher claiming
compensation via the eVoucher system no later than 45 days after issuance of the mandate or
the filing of a petition for writ of certiorari. Please contact the CJA Team at (404) 335-6167 or

cja_evoucher@ca11.uscourts.gov for questions regarding CJA vouchers or the eVoucher system.

<u>Clerk's Office Phone Numbers</u>

| | | | |
|---|---|---|---|
| General Information: | 404-335-6100 | Attorney Admissions: | 404-335-6122 |
| Case Administration: | 404-335-6135 | Capital Cases: | 404-335-6200 |
| CM/ECF Help Desk: | 404-335-6125 | Cases Set for Oral Argument: | 404-335-6141 |

OPIN-1 Ntc of Issuance of Opinion